In re Ira WILLIAMS and Faye
Williams, Debtors.

Ira WILLIAMS and Faye
Williams, Plaintiffs,

v.

FIRST NATIONAL BANK, ROSEDALE,
MISSISSIPPI, Defendant.

Bankruptcy No. 87–0175–BKC–DTH.

Adv. No. 89–4079.

United States Bankruptcy Court,
N.D. Mississippi.

Oct. 20, 1989.

Levi Boone, III, Cleveland, Miss., for Ira
and Faye Williams.

Robert Johnston, Cleveland, Miss., for
First Nat. Bank of Rosedale, Miss.

OPINION

DAVID W. HOUSTON, III,
Bankruptcy Judge.

On consideration of the complaint filed
by the debtors, Ira Williams and Faye
Williams, hereinafter referred to as debtors
or plaintiffs; answer and affirmative de-
fenses having been filed by the defendant,
First National Bank, Rosedale, Mississippi,
hereinafter referred to as First National
Bank; all parties being represented by
their respective attorneys of record; and
the Court having heard and considered
same hereby finds as follows, to-wit:

I.

The Court has jurisdiction of the subject
matter of and the parties to this proceeding
pursuant to 28 U.S.C. § 1334 and 28 U.S.C.
§ 157(b). This is a core proceeding as de-
fined in 28 U.S.C. § 157(b)(2)(A), (K), (L),
and (O).

II.

The debtors filed their voluntary Chapter
13 bankruptcy case on September 23, 1987.
Their Chapter 13 plan was confirmed by
the Court on November 16, 1987, and pro-
vided for the following payments, to-wit:

A. Unifirst Bank, original principal in-
debtedness in the sum of $54,450.00—the
debtors proposed to pay the sum of $621.00
per month outside the plan, representing
the regular monthly installments on the
indebtedness, in addition to the payment of
$69.00 per month through the plan to cure
a prepetition arrearage in the sum of
$2,486.79.

Unifirst Bank currently holds a first
deed of trust which is secured exclusively
by the debtors' principal place of residence.

B. First National Bank, Rosedale, Mississippi, original principal indebtedness in the sum of $24,235.68—the debtors proposed to pay the sum of $288.52 per month outside the plan, representing the regular monthly installments on the indebtedness, in addition to the payment of $24.04 per month through the plan to cure a prepetition arrearage in the sum of $865.56.

At the time that the debtors' plan was confirmed, they were under the impression that the indebtedness owed to First National Bank was secured by a second deed of trust, exclusively encumbering their principal place of residence, which was subordinate to the Unifirst Bank deed of trust. Subsequently, the debtors ascertained that this indebtedness was secured by other collateral which is discussed immediately hereinbelow.

When the debtors ascertained that the indebtedness owed to First National Bank was secured by collateral other than their principal place of residence, i.e., a rental house, they initiated the instant adversary proceeding on May 8, 1989, with the filing of a complaint seeking to modify First National Bank's second deed of trust.

First National Bank had previously filed a motion to dismiss the bankruptcy case and a motion to strike. A hearing was conducted by the Court on these motions on May 23, 1989. At said hearing, the Court made certain findings of fact from the bench which are incorporated in this Opinion by reference. Also, at said hearing, the Court ascertained that the debtors had amassed a post-petition arrearage on the payments owed to First National Bank, which were to be paid outside the plan, in the sum of $4,056.09. The Court informed the parties that a post-petition default in an amount this significant would ordinarily warrant the dismissal of the bankruptcy case. However, because the debtors had treated the claim of First National Bank in their original Chapter 13 plan either erroneously or inadvertently, the Court was of the opinion that the issue of modification should be considered further. The Court overruled the motion to dismiss, but lifted the automatic stay so that First National

Bank could commence the foreclosure of its deed of trust encumbering the rental property. An order was entered to this effect on June 9, 1989. At that point, there were three questions that required resolution, to-wit:

1. What was the balance of the indebtedness owed to Unifirst Bank? (By letter dated July 24, 1989, Unifirst Bank advised that as of September 23, 1987, the principal balance of the indebtedness was the sum of $51,194.10. The balance at the present time is still unknown.)

2. What was the value of the debtors' residential real property? (At a subsequent hearing conducted on July 20, 1989, which was set to consider the debtors' complaint, the parties agreed that the value of the residential real property was the sum of $55,000.00.)

3. Are the debtors precluded by the theories of res judicata or collateral estoppel from modifying their plan post-confirmation to "cram down" the secured claim of First National Bank? (This question has been briefed by the parties and will be resolved in this Opinion.)

III.

Because the debtors proposed to cure the prepetition arrearage owed to First National Bank, as well as, pay the regular monthly installments due under the indebtedness, First National Bank did not object to the confirmation of the debtors' plan. Since the debtors are now seeking to modify First National Bank's claim substantially, First National Bank has posited the defense that the plan cannot be modified post-confirmation because of the theories of res judicata and/or collateral estoppel. In support of this defense, First National Bank has relied on the cases of *In re Rush*, 1 CBC 2d 904 (Bankr.S.D.Fla.1980), *In re Johnson*, 25 B.R. 178 (Bankr.N.D.Ga. 1982), *Matter of Abercrombie*, 39 B.R. 178 (Bankr.N.D.Ga.1984), and *In re Kitchen*, 64 B.R. 452 (Bankr.D.Mont.1986). These cases all prohibit the modification of a secured creditor's claim post-confirmation, generally under the theory that the confirmation order is res judicata as to all justici-

able issues which were decided or which could have been decided at the confirmation hearing.

Two persuasive cases which hold to the contrary are *In re Stone*, 91 B.R. 423 (Bankr.N.D.Ohio 1988) and *In re Jock*, 95 B.R. 75 (Bankr.M.D.Tenn.1989).

In *Stone*, the surviving debtor, after the death of his spouse, moved to amend the Chapter 13 plan post-confirmation in order to abandon a vehicle, which secured an indebtedness owed to GMAC, and to pay reduced payments on the resulting *unsecured* deficiency claim. The deficiency claim was calculated as the difference between the value received by GMAC following the sale of the vehicle and the original amount of the secured indebtedness less the payments made subsequent to the plan being confirmed. Judge William Bodoh perceptively analyzed this issue and offered the following comment:

> GMAC argues that confirmation of the Plan prohibits reclassification of a secured party's claim pursuant to 11 U.S.C. Sec. 1327(a). Indeed, GMAC's position appears to have been accepted by the courts in *In re Abercrombie*, 39 B.R. 178 (Bankr.N.D.Ga.1984) and *In re Johnson*, 25 B.R. 178 (Bankr.N.D.Ga.1982). For the following reasons, however, this Court declines to follow the *Abercrombie* and *Johnson* decisions.
>
> 11 U.S.C. Sec. 1327(a) provides:
>
> a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

It is upon this Section that GMAC bases its argument that "confirmation of the Plan forbids a reduction and reclassification of a secured claim." *In re Abercrombie*, 39 B.R. at 179. However, 11 U.S.C. Sec. 1329 provides, in part:

> (a) At any time after confirmation of the plan ..., the plan may be modified, upon request of the debtor, ... to—

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments; or
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the Plan.
>
> (b)(1) Sections 1322(a), 1322(b), and 1322(c) of this Title and the requirements of Sec. 1325(a) of this Title apply to any modification under subsection (a) of this Section.
>
> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

Initially, it should be noted that a confirmed Plan does not unalterably and permanently define the rights and obligations of the parties involved. Section 1329(b)(2) provides that an approved, modified Plan automatically displaces the previously confirmed Plan. The provisions of Sec. 1327(a) must be construed in light of the rights to modification contained in Sec. 1329. Furthermore, Sec. 1329(a)(3) permits a debtor to request modification of a Plan in order to "alter the amount of the distribution to a creditor...." The amount of distribution to a creditor can be altered not only by reducing the amount paid to a creditor due to payments received from outside the Plan, but also by reclassifying a previously secured claim as an unsecured claim. The right to post-confirmation alteration of the rights of secured claimants is recognized in *5 Collier on Bankruptcy*, Sec. 1329.01 (rev. 15th ed. 1988):

> Of course, a post-confirmation modification which changes the rights of a holder of an allowed secured claim provided for by the modified plan must either be accepted by the holder, relinquish the collateral to the holder, or contain a cram down provision meeting the requirements of section 1325(a)(5)(B).

*Id.* at 1329–7. In the present case, the Debtor surrendered the collateral to

GMAC. Thus, this Court finds that a debtor is expressly authorized under Section 1329(a)(3) to reclassify a secured claim as unsecured when the creditor has liquidated its collateral but still claims a deficiency to be due from the debtor.

This conclusion is supported by other factors as well. Section 1329(b)(1) provides that a debtor's proposed modification must meet the same requirements for confirmation as an original Plan. Thus, we are persuaded that a hearing on a modification request is a new confirmation hearing which vacates the previous Order of Confirmation upon approval of the modification request. Furthermore, the Trustee points out that such a claim would be unsecured if the Debtor exercised its qualified right to dismiss the case and then refile a second Chapter 13 case. The Court sees no reason why a different result should follow when the debtor elects to modify a pending case rather than achieve the same result through dismissal and refiling. *Stone*, 91 B.R. at 424–425.

The *Jock* case also involved a factual situation where the debtors had moved to modify their Chapter 13 plan post-confirmation to provide for the surrender of the secured creditor's collateral and the treatment of any resulting deficiency as an unsecured claim. In a well reasoned decision, Judge Keith Lundin commented as follows:

> Boatmen's argues that 11 U.S.C.S. § 1327 (1987) prohibits the debtor to modify its treatment after the original confirmation order became final. There is some case support for this view. *See In re Abercrombie*, 39 B.R. 178 (Bankr. N.D.Ga.1984); *Kitchen v. Malmstrom Federal Credit Union (In re Kitchen)*, 64 B.R. 452 (Bankr.D.Mont.1986). *See also In re Johnson*, 25 B.R. 178 (Bankr. N.D.Ga.1982). The cases cited by the bank prohibit post-confirmation modifications based on the "res judicata" or binding effect of a confirmed Chapter 13 plan under § 1327(a).
>
> Section 1327(a) is not a limit on permitted modification of a confirmed Chapter 13 plan; rather, it is a statutory description of the effect of a confirmed plan or of a confirmed modified plan. A confirmed Chapter 13 plan binds the debtor (and all creditors), 11 U.S.C.S. § 1327(a), but a confirmed plan "may be modified ... at any time after confirmation of the plan but before the completion of payments under the plan...." 11 U.S.C.S. § 1329(a). The confirmed plan binds the debtor unless and until it is modified, and then the modified plan "becomes the plan," 11 U.S.C.S. § 1329(b)(2), and the modified plan has the effects described in § 1327. Sections 1322(a), (b), 1323(c) and 1325(a) are the appropriate sources of the limits on modification under § 1329. *See* 11 U.S.C.S. § 1329(b).....
>
> ... That the debtor could convert this Chapter 13 case to a Chapter 7, surrender the car to Boatmen's and (probably) discharge the deficiency is further evidence that Congress contemplated modification of a Chapter 13 plan to permit the surrender of collateral to the holder of an allowed secured claim. *See* 11 U.S.C.S. § 1307 (1987) (conversion of Chapter 13 cases); 11 U.S.C.S. § 348 (Supp.1988) (effect of conversion); 11 U.S.C.S. § 554 (Supp.1988) (abandonment of property of the estate).

*Jock*, 95 B.R. at 77, 78.

As mentioned hereinabove, 11 U.S.C. § 1327(a) provides, inter alia, that a confirmed plan binds the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan. 11 U.S.C. § 1329, which provides for the modification of a plan after confirmation, is set forth as follows:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

(Hereinafter all Code sections will be considered as Title 11, United States Code, unless specifically noted otherwise.)

In the opinion of this Court, § 1327(a) and § 1329 are clearly harmonious. Section 1329 literally compliments § 1327(a). If the drafters of the Bankruptcy Code intended for a confirmation hearing to have res judicata effect, there would be little or no reason for § 1329. This conclusion was reached in both the *Stone* and *Jock* opinions, i.e., the modified plan, if approved, displaces the previously confirmed plan. *See* § 1329(b)(2). In the case before this Court, the debtors through their complaint propose to modify or "cram down" the secured claim of First National Bank in keeping with the provisions of § 1325(a)(5)(B). This treatment is specifically contemplated in *5 Collier on Bankruptcy,* § 1329.01 (rev. 15th ed. 1988).

■ First National Bank's secured claim would be calculated by subtracting the amount of the indebtedness owed to Unifirst Bank, as of the effective date of the plan modification, from the value of the residential property, i.e., $55,000.00. Originally, the value of the rental property would have been considered as a part of First National Bank's secured claim, but since it has now been abandoned and foreclosed, its value is important only to the extent that it reduced the total debt owed to First National Bank. The current deficiency claim would then be calculated by deducting the allowed amount of the secured claim plus the value received from the sale of the rental property from the total indebtedness owed to First National Bank. Any payments made by the debtors post-confirmation, which are nominal at best, should, thereafter be applied to reduce the *unsecured* portion of the First National Bank claim.

If First National Bank were to succeed in prohibiting the debtors' modification of their plan post-confirmation, the case would most likely be converted or dismissed. Should this occur, only the debtors would be harmed. First National Bank is not going to be adversely impacted to any significant degree if the plan is modified. Supporting this conclusion, the Court would offer the following comments:

1. If the bankruptcy case had not been filed, the Court seriously doubts that First National Bank would entertain the notion of foreclosing its deed of trust encumbering the debtors' residential property because the amount of the first mortgage practically consumes the entire value of the property. On the other hand, if Unifirst Bank foreclosed, the lien of First National Bank would be extinguished in its entirety. In the event that First National Bank wanted to exercise its right of foreclosure, for whatever reason, it would also be confronted with the expenses of foreclosure, as well as, the attendant expenses of removing the debtors from the premises. Under the circumstances of this case, First National Bank's right of foreclosure is not a viable or a logical remedy.

2. Considering the debtors' financial prospects, the Court is of the opinion that they are simply incapable of funding their Chapter 13 plan as originally confirmed. The Court recalls that Mrs. Williams is now attempting to save her residence following a separation from her husband whose income is no longer available to support the

plan. As such, the reason for the proposed modification is amply justified and presented in good faith.

3. If this case were converted to Chapter 7, Mrs. Williams could attempt to reaffirm the indebtedness existing in favor of Unifirst Bank and void practically all of the lien of First National Bank's second deed of trust pursuant to the provisions of 11 U.S.C. § 506(d). Of course, under this scenario, she would be confronted with an immediate payment of the nonavoidable portion of First National Bank's lien, rather than paying that same value over time plus interest through a modified Chapter 13 plan.

4. Lastly, this case could be voluntarily dismissed and refiled. This presumes, of course, that the debtors would not run afoul of 11 U.S.C. § 109(g). The ability to refile, however, is another reason that the conclusion, expressed in those cases adhering to the res judicata effect of the confirmation order, is unsound.

In summary, the Court can see no legitimate reason to sustain the objection of First National Bank to the debtor's modification proposal. The debtors, now only Mrs. Williams, cannot afford the plan as originally confirmed. If the plan had to stand "as is," the case would probably end up being dismissed. If it were dismissed, First National Bank would likely receive absolutely nothing as a result of its second deed of trust encumbering the debtors' residence, simply because of the size of the indebtedness owed to Unifirst Bank which is secured by the first deed of trust.

First National Bank has already been permitted to recover on its lien encumbering the debtors' rental property. If the debtors' Chapter 13 plan can be modified, First National Bank will receive at least some distribution on the remaining balance of its allowed secured claim. Under any other conceivable scenario, it would receive less.

The Court is therefore of the opinion that the affirmative defense, asserted by First National Bank that the debtors' Chapter 13 plan cannot be modified post-confirmation, is not well taken and said affirmative defense shall be overruled.

An Order shall be entered consistent with this Opinion pursuant to Rule 9021, Federal Rules of Bankruptcy Procedure, and Rule 58, Federal Rules of Civil Procedure.