**In re Ann RIMMER, Debtor.**

**No. 88–11562B.**

United States Bankruptcy Court,
W.D. Tennessee, E.D.

July 24, 1992.

Lloyd C. Utley, Jackson, Tenn., for debtor.

Bradley A. Sigler, Jackson, Tenn., for Dyersburg Employees Credit Union.

William C. Guy, Chapter 13 Trustee, Jackson, Tenn.

George Stevenson and George Emerson, Jr., Chapter 13 Trustees—Memphis, Memphis, Tenn.

Madalyn Scott, Memphis, Tenn., for U.S. Trustee.

## MEMORANDUM OPINION AND ORDER ON DEBTOR'S MOTION TO SURRENDER VEHICLE

WILLIAM H. BROWN, Bankruptcy Judge.

The debtor moved to surrender a 1986 Dodge Aries to the secured creditor, Dyersburg Employees Credit Union ("Credit Union"), and the substance of the debtor's motion is to modify her confirmed Chapter 13 plan pursuant to 11 U.S.C. § 1329(a) so

as to satisfy the Credit Union's secured claim by the surrender and to reclassify the remainder of the Credit Union's deficiency claim as unsecured.

The issue presented is one of both law and fact as to whether the debtor may so modify a confirmed plan. The debtor's motion was contested by the Credit Union, thus presenting a core proceeding to the Court. 28 U.S.C. § 157(b)(2)(L). The following contains findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

### SUMMARY OF FACTS

The debtor is in a Chapter 13 plan which was confirmed on December 14, 1988, with the plan amended by consent order, dated March 1, 1990, providing that the Credit Union would be treated as a secured creditor for $5,350.00, with interest accruing at 12%, payable at $140.00 per month. In addition, the plan provides for the Credit Union to have an unsecured debt of $846.57. There is one other secured creditor in the plan, U.S.A. Financial Services, which holds security in household goods. The plan was confirmed with a sixty month payment term. At this time, $2,080.04 remains owing to the Credit Union on its original secured debt, and the debtor is approximately $800.00 in arrears on her payments to the Credit Union. The debtor testified that her work at her place of employment had slowed down, creating financial stress, that the Dodge Aries needed a new motor, which would cost approximately $1,500.00, that the body of the car was in good condition, and that the car was not worth much at this time. She further testified that she had received an income tax refund of $1,800.00, at which time she approached the Credit Union about working with her on trading cars so that the Credit Union would receive a replacement lien on the substituted car, but the Credit Union advised her that it was too much trouble to go to court about such a trade. The debtor was unable financially to both repair the Aries and continue paying for it in the plan, and the debtor needed a vehicle to drive to work.

There was no indication in the proof that the debtor had abused the Aries or had failed to maintain it properly. There also was no proof of a lack of good faith on the debtor's part as to the proposed surrender and the resulting modification to her plan.

### DISCUSSION AND CONCLUSIONS OF LAW

It is a common occurrence in Chapter 13 cases to have the debtor move to allow a surrender of collateral, usually depreciable assets such as vehicles, and because of the frequency of these motions, the Court has determined that it is appropriate to issue a written opinion establishing this Court's view of such motions. There is, of course, a split of authority on whether such motions should be granted, and this opinion will discuss some of the divergent cases.

The beginning point for this discussion must be 11 U.S.C. § 1329 which controls post-confirmation modification:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, un-

less the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329.

This Court previously has required "strict compliance with § 1329." *In re Lynch,* 109 B.R. 792, 795 (Bankr.W.D.Tenn. 1989). This strict compliance in *Lynch* included "a proper motion for modification, which motion must be noticed to *all* scheduled creditors or at the very least, all creditors holding allowed claims in the confirmed Chapter 13 plan." *Id.* The present motion was styled merely as a motion to surrender personal property, and it was served only upon the Chapter 13 Trustee, the debtor, the Credit Union, and the insurance company with coverage on the Aries. There is no indication in the written motion that it is one to modify the plan; although, as previously noted, that is the gravamen of the motion. Certainly, the present motion does not "give all affected creditors [specifically, the other unsecured creditors] the ability to object to the modification and to be advised of the impact of that modification on plan payments to each creditor." *Id.* As the Court observed in *Lynch,* the debtor should not be given "a de facto modification without complying with the requirements of § 1329." *Id.*

Because this debtor did not comply with the Court's and Code's requirements for notice and opportunity for hearing on postconfirmation modifications that may have an impact upon other unsecured creditors in this plan, the Court could deny the debtor's motion and engage in no further discussion. However, that denial would be without prejudice to the debtor's renewal of her motion; therefore, the Court will discuss the requirements for allowing a modification of the type sought by this debtor.

■ As stated, the first step is for the debtor to file a motion seeking to modify a confirmed plan pursuant to § 1329(a), and this motion must be noticed to all creditors and to the Chapter 13 Trustee. The motion must make it clear that the debtor is seeking not merely to surrender collateral, but

also to modify the confirmed plan, and of course the motion should be specific in the relief sought.

■ Assuming, as in this case, that the debtor seeks to modify a confirmed plan by surrendering a depreciable asset such as a vehicle and to reclassify a portion of the secured debt by adding a deficiency to the unsecured class, the debtor will first have the burden of showing a sufficient "change of circumstances" subsequent to the confirmation so as to justify a modification. *In re Gadlen,* 110 B.R. 341, 343–44 (Bankr. W.D.Tenn.1990). Such a showing of changed circumstances may be necessary in order to overcome the "normal preclusive effects" of the prior final confirmation order. *See* KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 6.9, at 6–6 to 6–8 (1991); *see generally,* Comment, *Postconfirmation Modification Of Chapter 13 Plans: A Sheep In Wolf's Clothing,* 9 BANKR.DEV.J. 153, 157 & n. 33, 158–62 (1992); *compare In re Abercrombie,* 39 B.R. 178 (Bankr.N.D.Ga.1984) (holding that reclassification of a secured claim would violate res judicata principles). In the present case, the debtor made a prima facie showing that a sufficient change of circumstances had occurred subsequent to the confirmation of her plan, specifically, that, without fault on her part, her Aries vehicle had suffered engine failure.

■ After a suitable showing of change of circumstances, the Code permits the Court to consider, under § 1329(a), whether a postconfirmation modification may be allowed. That analysis involves an examination of the Code's provisions, and courts have differed on those provisions when the issue is one of reclassification of a secured creditor. *See generally* KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 6.49 at 6–125 TO 6–128 (1991). Of course, if the proof established that, through the offered surrender of collateral, the secured creditor was receiving a value equivalent to its remaining secured debt, such a modification would be permissible and unopposed. It is normal, however, to find that the debtor has used the depreciable asset, resulting in a loss of value, and that the asset is not

worth the equivalent of the remaining secured debt. Does the Code permit such a debtor to modify a confirmed plan by surrendering a depreciable asset for less value than the secured debt and then reclassifying the balance as unsecured? Assuming that it does, if there is an objection to the modification, the Court must consider the impact of the modification on other creditors' payments in the plan. *In re Lynch*, 109 B.R. at 795.

For purposes of the present motion, the difficult question is whether such a modification occasioned by surrender of the vehicle is permissible at all. One Court has said "no" on the basis that § 1329(a) "does not permit individualized treatment of class members or the reclassification of a single creditor from a secured to an unsecured status." *In re Sharpe*, 122 B.R. 708, 710 (E.D.Tenn.1991). That District Court, in reversing the Bankruptcy Court, did not find the statutory language of § 1329(a)(1) to be broad enough to allow such reclassification modifications. However, the rationale of the *Sharpe* Court appears to be based in large part upon the discrimination between separate members of the same secured class. *See Id.* This Court recognizes that Chapter 13 plans in this district are much simpler in format than are Chapter 11 or Chapter 12 plans. Most practitioners have computer produced forms that follow a format utilized by the Chapter 13 Trustee, and in fact, the Chapter 13 Trustee's office generates the form order of confirmation which has a simple, one page plan attached. The plan is often the result of negotiation between the debtor, creditors and Trustee at the § 341 meeting.

While it is true in this case that the confirmation order and one page plan list the two secured creditors without a separate class distinction, that is more the result of form than substance. This Court has always understood that each secured creditor was a separate class of the plan. *See In re Jock*, 95 B.R. 75, 76 (Bankr. M.D.Tenn.1989). In fact, that is the only approach to plan formulation that complies with the Code. Section 1322(a)(3) requires that "if the plan classifies claims, [it shall] provide the same treatment for each claim within a particular class." 11 U.S.C. § 1322(a)(3). This plan clearly classifies claims, referring to secured and unsecured creditors. The plan can only be read as having two separate secured classes because it provides a different treatment for each secured creditor. U.S.A. Financial Services is given a $200.00 secured claim, with no interest, payable at $10.00 per month. As stated earlier, the Credit Union has a secured claim of $5,350.00, with interest accruing at 12%, payable at $140.00 per month. If these two creditors are in the same class, the plan could not have been confirmed initially because of its violation of § 1322(a)(3). This plan is not dissimilar from the thousands of other Chapter 13 plans confirmed in this district, except that many plans have home mortgages in them, which home mortgage creditors clearly would have a separate class of claims. To require more formal plans in a district with large Chapter 13 filings, such as this district's filings, would be a wasteful effort for the parties, the Trustee's office and the court.

■ This Court therefore respectfully disagrees with the *Sharpe* Court and concludes that this district's Chapter 13 plans do provide for separate classes of secured creditors and that each secured creditor is subject to possible modification under § 1329(a).[1]

Another court has recently followed *Sharpe* but has added that "§ 1329(a)(1) ought to be limited to adjustments in amounts of payments under the plan as opposed to material changes in the treatment of secured creditors." *In re Holt*, 136 B.R. 260, 261 (Bankr.D.Idaho 1992). The *Holt* Court's conclusion is based upon doubts that "Congress intended to afford the debtor the options available under 11 U.S.C. § 1325(a)(5)(B) and (C) throughout

---

1. The Court is aware that postconfirmation modification may not be permitted to run afoul of § 1322(b)(2)'s prohibition against modifica-

tion of certain home mortgages. *See generally In re Gadlen*, 110 B.R. 341 (Bankr.W.D.Tenn. 1990).

the life of the plan." *Id.* No support for that Court's doubts is given in the opinion.

A reading of § 1329(a)(1) is certainly subject to at least two interpretations: either that the specific periodic payments may be increased or decreased or that the total amount of the payments on a claim may be increased or decreased. *See, e.g., In re Frost,* 123 B.R. 254, 258 (S.D.Ohio 1990) (holding that the phrase "to ... reduce the amount of payments on claims" in § 1329(a)(1) is ambiguous). Either meaning is a natural one arising from the language of the statute, and this Court concludes that both possibilities exist under the statute. *Id.* This Court agrees that "it is only when a proposed modification complies with Section 1329(a)(1), that reference must be made to Section 1329(b)(1), in order to determine if the plan as modified conforms to the requirements of Sections 1322(a) and (b)...." *In re Taylor,* 99 B.R. 902, 905 (Bankr.C.D.Ill.1989). In other words, "[a] debtor cannot bootstrap Section 1329(b)(1) to enlarge the modifications permitted by Section 1329(a)." *Id.* However, it is not necessary to "bootstrap" if § 1329(a) permits the type of modification sought by this debtor's proposed surrender of collateral.

Two courts have found that a surrender and liquidation of collateral and the resulting reclassification of the creditor's remaining deficiency claim is "expressly authorized under Section 1329(a)(3)." *In re Stone,* 91 B.R. 423, 425 (Bankr.N.D.Ohio 1988); *In re Williams,* 108 B.R. 119, 121–22 (Bankr.N.D.Miss.1989). The *Williams* Court reasoned, as did the *Stone* Court, that following the debtor's surrender of collateral, the creditor's subsequent liquidation of the collateral was payment other than under the plan, which had provided for periodic payments. That liquidation payment has altered the amount of distribution on the secured claim under the plan and the addition of an unsecured deficiency claim is a further alteration of the distribution to that creditor. *In re Williams,* 108 B.R. at 121–22. That is a plausible meaning to be given to § 1329(a)(3). However, this Court concludes that § 1329(a)(1) is sufficient statutory authority for a modifi-

cation such as this debtor seeks, assuming that the debtor satisfies the burden of proving a sufficient change in circumstances to justify a modification.

That is the basis for the well-reasoned opinion of Judge Keith M. Lundin in *In re Jock,* 95 B.R. 75 (Bankr.M.D.Tenn.1989), in which that Court concluded that a debtor's proposed modification to surrender a car, to allow liquidation of the collateral, and to add the deficiency as an amended, unsecured claim falls "within the meaning of § 1329(a)(1)." *Id.* at 76. This Court notes that such a modification, as is attempted here, does not present the same problem faced by this Court in *In re Goodman,* 136 B.R. 167 (Bankr.W.D.Tenn.1992), where the debtor attempted to add postpetition unsecured creditors to a confirmed plan. In the present scenario, the debtor is not adding a new postpetition creditor, but is, rather, attempting to alter the amounts of an existing prepetition creditor's secured and unsecured claims. As noted earlier, the Credit Union held, under the original confirmed plan, allowed secured and unsecured claims. A different problem may be presented if a debtor had listed the creditor as fully secured in the confirmed plan and then attempted in a postconfirmation modification to add an unsecured claim, but this Court will not address that problem, which is not now before the Court.

Further, the Court notes that this proposed modification does not, at this point, attempt to alter the percentage to be paid to the unsecured creditor class. By an order entered subsequent to the confirmation, the percentage to be paid to the unsecured creditors in this plan was fixed at five percent. The Court will not, therefore, engage in a discussion of the problem that might be presented by a postconfirmation modification that sought to adversely impact the unsecured creditor class.

As the *Jock* Court reasoned, § 1329(a)(1) permits the type of modification sought by this debtor, but only if the debtor then satisfies the requirements of §§ 1322(a), 1322(b), 1323(c), and 1325(a), which are made necessary by § 1329(b)(1). In essence, a debtor's motion for postconfirma-

tion modification will trigger an examination of the plan and confirmation requirements, including both the mandatory and permissive plan requirements of § 1322. As the *Jock* Court observed, § 1322(b)(8) permits the payment of a claim from property of the estate or of the debtor. *In re Jock*, 95 B.R. at 77. Further, the debtor is permitted by § 1325(a)(5)(C) to satisfy a secured claim by surrender of the collateral. *Id.* That Court did not read § 1327(a) as precluding modification of this nature, since such a reading could render § 1329 meaningless. Rather, § 1327(a) "is a statutory description of the effect of a confirmed plan or of a confirmed modified plan. A confirmed Chapter 13 plan binds the debtor (and all creditors), ...," but that binding effect is subject to modification, if appropriate, under § 1329(a). *Id.*

This Court, therefore, agrees with the *Jock* Court that a debtor possibly *may* modify a confirmed plan by surrender of collateral, by reduction of the secured claim in the amount of the liquidation of the collateral, and by increase of the unsecured claim in the amount of the remaining deficiency, if any. However, such a modification motion must be properly noticed to all creditors and the Chapter 13 Trustee, and the debtor bears the burden of proof on the attempted modification meeting the requirements of § 1329(b)(1). An extremely important element of this proof will be the good faith requirement of § 1325(a)(3). As the *Jock* Court observed, "[t]he Bankruptcy Code protects the secured claim holder from abusive depreciation between confirmation and modification by applying the 'good faith' test at confirmation of a modified Chapter 13 plan." *Id.* at 78. Evidence of a debtor's abuse of the depreciable collateral or failure to properly maintain it would be important factors in the good faith equation. Also, evidence of the reasons behind a debtor's failure to pay the ongoing plan payments prior to the filing of the motion to modify should be considered by the court in its ruling on a debtor's motion to modify.

█ The *Jock* Court also reached an appropriate conclusion that the secured creditor "is entitled by § 1327(a) to the binding effect of the original confirmation order through the date the debtor surrendered the car." *Id.* Just as the debtor could not surrender collateral in a confirmed plan absent consent of the secured creditor or the approval by the court of the debtor's plan modification, the date of surrender of the collateral can not be forced upon the secured creditor without its consent or a judicial determination. As in the present case, if the debtor has not paid the secured creditor in compliance with the confirmed plan, any amount not paid through the date of surrender is still a part of the secured claim which must be paid. In the present case, the proof at the time of the hearing established that $2,080.04 remained owing on the original secured debt, of which the debtor was in arrears of approximately $800.00. The arrearage in the secured plan payments will remain a secured debt, accruing interest until paid. It certainly may be true in this case that after payment of that delinquent secured debt and after application of the proceeds realized by the Credit Union upon liquidation, the Credit Union may have a relatively small deficiency to be added to its existing unsecured claim. Further, the Court notes that § 1329(c) requires modified payments to be completed within a maximum of five years from the date of the first payment under the original plan.

█ However, in the final analysis of this case, the debtor's motion did not notice all creditors of the debtor's attempted modification, and the debtor will be required to amend her motion, consistent with this opinion, to notice it with an opportunity for hearing to all creditors, and if written objections are filed, the Court will conduct a further hearing on this debtor's proposed modification. If the debtor and Credit Union are now able to reach a consent, the debtor will be required to notice any consensual order to all creditors so that they may have an opportunity for hearing on such a consensual order.

IT IS SO ORDERED.