**CHRYSLER FINANCIAL CORPORATION**

v.

**Sahnica Denise NOLAN.**

No. 3–98–1070.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 7, 1999.

---

Nancy B. Myers, Hale, Headrick, Dewey & Wolf, Nashville, TN, for Chrysler Financial Corporation, appellant.

Maria M. Salas, Rothschild & Associates, Nashville, TN, for Sahnica Denise Nolan, appellee.

## MEMORANDUM

HIGGINS, District Judge.

Appellant Chrysler Financial Corporation appeals an order of the United States Bankruptcy Court which granted the debtor's motion to modify the plan and incur credit. *In re: Sahnica Denise Nolan,* Bankruptcy Action No. 397–07979–KL–13; Docket Entry No. 2. For the following reasons, the Court will reverse the bankruptcy court's decision and remand this action for disposition consistent with the judgment of this Court.

### I.

On August 22, 1997, Sahnica Denise Nolan, the debtor, filed a petition for relief under Chapter 13 of the Federal Bank-

ruptcy Code. On September 22, 1997, Chrysler Financial Corporation, the creditor, filed a proof of claim in the case, showing that the debtor owed it $12,291.45 on an installment contract for the purchase of a 1995 Mitsubishi Mirage automobile. On September 23, 1997, the bankruptcy court confirmed the debtor's Chapter 13 plan. Under the plan, the creditor had a secured claim on the automobile in the amount of $8,200.00 with interest at 10 percent per annum, to be repaid at monthly disbursements to the creditor in the amount of $207.97.

On August 26, 1998, the debtor filed a motion to modify plan and incur credit. Specifically, the debtor asked to surrender her vehicle to the creditor, to reclassify the deficiency owed on the vehicle to an unsecured claim, and to incur credit in the amount of $10,000.00 to purchase another car. On September 14, 1998, the creditor filed an objection to the motion on the grounds that Section 1329 of the Bankruptcy Code does not allow a debtor to reclassify a secured claim as an unsecured claim absent a showing of good faith. The creditor argued that the debtor had not acted in good faith because she had failed to properly maintain her vehicle.

On October 19, 1998, a hearing was held before Judge George C. Paine, in which the debtor testified that she had placed 100,000 miles on the vehicle in three years, and had changed the oil three times between February and August of 1998.[1] After hearing the debtor's testimony and arguments by counsel, Judge Paine granted the debtor's motion, finding that the debtor did not act in bad faith.

On November 2, 1998, the creditor filed a notice of appeal (Bankruptcy Action No. 397–07979–KL–13; Docket Entry No. 1). On November 12, 1998, the creditor filed an amended notice of appeal (Bankruptcy Action No. 397–07979–KL–13; Docket Entry No. 3).

1. Apparently, the debtor could only produce documentation for two oil changes.

## II.

The district court has jurisdiction to hear appeals from final judgments of the bankruptcy court under 28 U.S.C. § 158. The district court reviews the bankruptcy court's findings of fact under a clearly erroneous standard, while conclusions of law are reviewed de novo. *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir.1993).

The creditor in this case argues that the bankruptcy court was not empowered under 11 U.S.C. § 1329 to modify the plan and convert the deficiency owed on the vehicle to an unsecured claim. As this issue clearly involves a conclusion of law, the Court will conduct a de novo review of the bankruptcy court's decision in that respect.[2]

## III.

Section 1329 of the Bankruptcy Code provides in pertinent part:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

11 U.S.C. § 1329(a) and (b)(1). The creditor argues that "[t]he modification sought by the debtor in the present case is not of a type prescribed by section 1329." Chrysler's memorandum (filed January 19, 1999; Docket Entry No. 6) at 5.

The bankruptcy court apparently based its decision on the assumption that Section 1329 permits the type of modification sought by the debtor in the instant case.[3] Therefore, the Court shall consider the case law in this district dealing with this issue.

### A. *Anderson* Decision

In *In re Anderson*, 153 B.R. 527 (Bankr. M.D.Tenn.1993) (Paine, J.), the court allowed modification of the debtor's Chapter 13 plan "to reflect the satisfaction of the Bank's secured claim by its repossession of the Debtors' automobile." *Id.* at 529. The *Anderson* court based its holding in part on *In re Jock*, 95 B.R. 75 (Bankr. M.D.Tenn.1989), and found that "modification of a secured claim in a Chapter 13 case complies with § 1329(a)(1) because each secured claim consists of its own 'particular class.'" *Anderson*, 153 B.R. at 528.

The *Anderson* court also noted that the *Jock* decision made it clear that the "Bankruptcy Code clearly permits the Debtors to 'reclassify' the Bank's claim as unsecured when the Bank has obtained possession of its collateral." *Id.* Even though

---

**2.** The creditor also argues that the debtor failed to establish that her proposed modification was made in good faith and that she failed to prove an unanticipated change of circumstances. The creditor further disagrees with Judge Paine's findings that there was no evidence that the vehicle had been mistreated; that the debtor had experienced a degradation in her livelihood; and that there was a likelihood the debtor's income would increase upon obtaining reliable transportation. As the Court finds that Section 1329 does not allow for the proposed modification, the Court will not address the creditor's other arguments or the applicable standard of review.

**3.** The bankruptcy court made its decision on the record and entered an order to that effect subsequent to the hearing but cited no case law in support of its decision. *See* transcript (Bankruptcy Action No. 397–07979–KL–13; Docket Entry No. 47).

*Anderson* acknowledged that the *Jock* decision had been criticized, the *Anderson* court allowed the modification after distinguishing that "[i]n the other cases, the debtors attempted to force a change of circumstance upon the creditor after confirmation, whereas in this case, the Bank has taken affirmative action in repossessing and selling its collateral." *Id.* The Court notes that, in the instant case, no such distinguishing facts are present; rather, it is the debtor who is attempting to force the change upon the creditor. The Court shall, therefore, give further consideration to *Jock*.

### B. Analysis of Jock decision

#### 1. Classification of Secured Claims

In *Jock*, the bankruptcy court allowed the debtor's Chapter 13 plan to be modified to reclassify the secured claim to an unsecured claim by surrendering the car to the creditor. The court first found that the proposed modification fell within the meaning of Section 1329(a)(1), citing *In re Wittenmeier*, 4 B.R. 86 (Bankr.M.D.Tenn. 1980), to support that "[i]t has long been recognized in this district that each secured claim is separately classified in a Chapter 13 case." *Jock*, 95 B.R. at 76.

In *Wittenmeier*, the court addressed the trustee's argument that Section 1322, which describes the contents of a Chapter 13 plan, does not permit the classification of secured claims, and thus, the debtors were not permitted to make mortgage payments outside the plan. The court rejected the trustee's argument, noting that Section 1322(b)(2) provides that the plan may modify the secured party's rights and therefore "the Code recognizes and permits the classification of secured creditors. Indeed, Congress has classified the creditor holding a mortgage on the debtor's home. It is the only claim not subject to modification by the debtor." *Wittenmeier* at 87. Accordingly, the court found that "each secured creditor is in a separate class." *Id.*

■ The Court notes that *Wittenmeier* only dealt with a claim secured by the debtor's principal residence, which is specifically addressed in Section 1322 as not being subject to modification, and did not deal with a claim secured by a vehicle as in the instant case. The Court, however, agrees with *Wittenmeier* that each secured creditor "can be treated differently and separately" as "each secured creditor has different collateral or different priorities in collateral." There is disagreement in the case law as to whether such treatment necessarily means that each secured claim is always separately classified in a Chapter 13 case and thus may be modified as proposed in the instant case.

In *Sharpe v. Ford Motor Credit Co. (In re Sharpe)*, 122 B.R. 708 (E.D.Tenn.1991), the district court considered the same issue presented in this case and reversed the bankruptcy court's decision permitting the debtors to modify their Chapter 13 plan to convert the creditor's secured claim to an unsecured claim. In *Sharpe*, the debtor's basis for the modification was that the car securing the obligation had "'blown an engine.'" *Id.* at 709. The court held:

> The language of § 1329(a)(1) is clear and unambiguous. A confirmed plan may be modified to "increase or reduce the amount of payments on claims of a particular class provided for by the Plan." The statute does not permit individualized treatment of class members or the reclassification of a single creditor from a secured to an unsecured status.
>
> .... The plain language of the statute deals with modifications in the treatment of classes, not individual creditors.

*Id.* at 710.

However, in *In re Rimmer*, 143 B.R. 871 (Bankr.W.D.Tenn.1992), the bankruptcy court noted:

> This Court has always understood that each secured creditor was a separate class of the plan. In fact, that is the only approach to plan formulation that

complies with the Code. Section 1322(a)(3) requires that "if the plan classifies claims, [it shall] provide the same treatment for each claim within a particular class." This plan clearly classifies claims, referring to secured and unsecured creditors. The plan can only be read as having two separate secured classes because it provides a different treatment for each secured creditor.

*Id.* at 874. (citations omitted). Although the Court finds the language in *Rimmer* to be persuasive,[4] the Court finds that the issue in this case turns on whether Section 1329(a)(1) only allows for adjustments to specific periodic payments or allows for adjustments to the total amount of the payments on a claim, and not on whether a secured claim is in a separate class. Accordingly, the Court will take a closer look at Section 1329(a)(1).

### 2. Interpretation of Section 1329(a)(1)

The *Jock* court interpreted Section 1329 in such a way as to allow for an adjustment to the total amount of the payments on a claim. *Jock* found that:

This Chapter 13 debtor could have satisfied the secured claim of Boatmen's by surrendering the car to the bank at confirmation of the original plan in February of 1988. The incorporation of §§ 1322(b)(8)[5] and 1325(a)(5)(C)[6] into the standards for post-confirmation modification in § 1329 empower this Chapter 13 debtor to modify the con-

firmed plan to surrender the car in satisfaction of Boatmen's secured claim.

*Id.* at 77. The Court agrees with *In re Taylor,* 99 B.R. 902 (Bankr.C.D.Ill.1989), which criticized the *Jock* decision and held:

This Court declines to adopt such an expansive approach to Section 1329, as taken by the courts in *[In re] Frost* [96 B.R. 804 (Bankr.S.D.Ohio 1989)] and *Jock.* The language of Section 1329(a)(1) is plain. A confirmed plan may be modified to "increase or reduce the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. Section 1329(a)(1). In this Court's view, it is only when a proposed modification complies with Section 1329(a)(1), that reference must be made to Section 1329(b)(1), in order to determine if the plan as modified conforms to the requirements of Sections 1322(a) and (b), which define mandatory and permissive plan contents, as well as the requirements for confirmation contained in Section 1325(a). A debtor cannot bootstrap Section 1329(b)(1) to enlarge the modifications permitted by Section 1329(a).

*Taylor,* 99 B.R. at 904–05. The Court further agrees with the notation in *Taylor* that "[w]hile the proposed modification in *[Jock]* reduced the claim of a secured creditor, as discussed by the court, it also added a claim to the class of unsecured creditors, a modification which this Court

---

4. Despite such language, *Rimmer* does not support the proposed modification in the instant case, as it is distinguishable. In *Rimmer,* the creditor had a secured claim and an unsecured claim, and thus, the court found that

the debtor is not adding a new postpetition creditor, but is, rather, attempting to alter the amounts of an existing prepetition creditor's secured and unsecured claims.... A different problem may be presented if a debtor had listed the creditor as fully secured in the confirmed plan and then attempted in a postconfirmation modification to add an unsecured claim, but this Court will not address that problem, which is not now before the Court.

*Id.* at 875. In the instant case, the creditor is listed as fully secured, and thus, the debtor is attempting to add an unsecured claim postconfirmation. Accordingly, *Rimmer* is not on all fours with the instant case.

5. Section 1322(b)(8) states that the plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor."

6. Section 1325(a)(5)(C) provides that the court may confirm the plan if "the debtor surrenders the property securing such claim to such holder."

does not believe is permitted by Section 1329(a)." *Id.* at 905, n. 3.

The Court agrees with the interpretation of Section 1329(a)(1) in *In re Coleman,* 231 B.R. 397 (Bankr.S.D.Ga.1999). The *Coleman* court disagreed with the interpretations in *Jock* and *Rimmer* and decided to "follow the other line of cases which adhere to the former alternative: that Section 1329(a)(1) permits a post-confirmation modification only to alter the amount of specific periodic payments." *Coleman,* 231 B.R. at 399. The *Coleman* court held that although "Section 1329(a)(1) could be clearer, [ ] it does not expressly permit a debtor to alter, reduce or reclassify a previously allowed secured claim," and cited *In re Dunlap,* 215 B.R. 867 (Bankr. E.D.Ark.1997); *In re Banks,* 161 B.R. 375 (Bankr.S.D.Miss.1993); and *In re Abercrombie,* 39 B.R. 178 (Bankr.N.D.Ga.1984) in support of its holding. *Id.*

In *Dunlap,* the bankruptcy court concluded that "the Debtors' proposed modification is not authorized by the terms of 11 U.S.C. § 1329 and is an unfair manipulation of the provisions of Chapter 13 of the Bankruptcy Code." *Id.* at 870. The court based its conclusion in part on the fact that

the Debtors seek to bifurcate a claim, which is already classified as fully secured, into a secured claim measured by the depreciated wholesale value and an unsecured claim measured by the unpaid deficiency. Consequently, the proposed modified plan values Chrysler's claim a second time, rendering the requirement of section 1325(a)(5)(B)(ii) [7] nugatory. Third, section 1329 does not specifically authorize a modified plan to alter the amount of a previously determined secured claim or to reclassify a claim from secured to unsecured.

*Id.*

In *Banks,* the bankruptcy court considered a similar issue and quoted extensively from a passage in *Norton Bankruptcy Law and Practice* on this issue:

Once a creditor's allowed claim has been determined under Code § 506(a) to be fully secured or to be secured for a certain amount or its secured status has otherwise been fixed, and a plan dealing with the secured claim has been confirmed, it surely must be thought that this substitute for the creditor's prior collateral rights in property of the estate will enjoy the same protection under the Fifth Amendment as did those collateral rights. Not to so conclude presupposes a cruel and deceptive system of laws—at least from the creditor's viewpoint.

. . . .

. . . . The boldest and most frequent attempt by debtors to use the postconfirmation modification to alter the treatment of secured claims occurs when the collateral no longer appears to have a value which justifies full payment of the balance of the secured claim—in contrast with the composition percent being paid on unsecured claims.

*Banks,* 161 B.R. at 377 (quoting *Norton Bankruptcy Law and Practice 2d* § 124:3, at 124–25 and 124–26). *Banks* further quoted the following footnote from *Norton:*

[I]t is a non sequitur to say that Code § 1327(a) does not limit postconfirmation modifications of plans, because that provision is merely a statutory statement of a confirmed plan or a modified confirmed plan.[8] Rather, a straightforward interpretation of the rule in Code

---

7. Under Section 1325(a)(5)(B), the court shall confirm a Chapter 13 plan if "(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim."

8. *Norton* was specifically criticizing the statement in *Jock* that "Section 1327(a) is not a limit on permitted modification of a confirmed Chapter 13 plan; rather, it is a statutory description of the effect of a confirmed plan or of a confirmed modified plan." *Jock,* 95 B.R. at 77.

§ 1327(a) that the "provisions of a confirmed plan bind the debtor and each creditor ..." is that it is binding on debtor and creditor, subject to a fair and justifiable modification of the amount or time of payments on the creditor's claim as the language of Code § 1329(a) provides—not a change in part of the claim from secured to unsecured with a resultant change in the total amount to be paid. The latter attributes to Congress an unlikely intention to give the debtors the option to shift to holders of allowed secured claims any loss in the value of collateral suffered by the debtor of an extent sufficient to cause a change of mind by the debtor and a proposal to make a unilateral modification in the plan.

*Id.* at 124–27 and 124–28, n. 79. The Court agrees with the conclusion reached in *Banks* that, even in the absence of misconduct or lack of good faith by the debtor, there is not "sufficient justification found in the Bankruptcy Code for allowing the debtor to shift the burden of unexpected collateral depreciation to Mercury, after confirmation of her chapter 13 plan, particularly when the creditor has already experienced a cram down of valuation at the time of confirmation." *Banks,* 161 B.R. at 379.[9]

In *Abercrombie,* the bankruptcy court rejected a reclassification of the secured claim to an unsecured claim holding that:

> Section 1329 permits the debtor under certain circumstances to modify the plan after confirmation as the debtor is attempting to do in this case via the instant proceeding. Section 1329, however, does not provide the debtor with a means to reclassify a previously allowed secured claim as unsecured after the

plan has been confirmed. To do so would be to circumvent the principles of res judicata which bind the debtor and creditor noted above.

*Abercrombie,* 39 B.R. at 179. The court also noted that under Section 1325(a)(5), "the debtor's proposed Chapter 13 plan must either provide that the secured creditor retain its lien and be paid the value of its claim over the life of the plan or, in the alternative, surrender the secured property." *Id.* Because the debtor chose to keep possession of the vehicle rather than allow General Motors to recover the vehicle under Section 1325(a)(5) and was, thus, bound by that decision under Section 1327, the court found that "[t]he interrelationship of §§ 1325(a)(5) and 1327 of the Code" compelled it to deny the debtor's proposed modification of the plan. *Id.*

Based on the above cases and the applicable statutes, the *Coleman* court found that

> a change in the amount of payment may be employed only to accelerate or to slow the rate at which the claim is paid, not to alter the amount of the claim. In other words, altering the amount or timing of payments on a secured claim cannot change the fact that, in the end, the full amount of the secured claim established, as of the effective date of the plan, must be paid.

*Coleman,* 231 B.R. at 399–400. The Court agrees with the sound and reasoned judgment of *Coleman* and its interpretation of Section 1329(a)(1).

### 3. Final Comments on Jock

The Court notes that *Jock* also based its decision in part on the following reasoning:

> That the debtor could convert this Chapter 13 case to Chapter 7, surrender the

---

9. Although the Court agrees with the conclusion in *Banks,* it is puzzled by its statement that "[i]f the amount of a secured claim were to be subject to postconfirmation modification, Section 1329 undoubtedly would not have explicitly omitted secured creditors from the list of those who are permitted to request modification." *Banks,* 161 B.R. at 378. Although Section 1329(a) only provides for modification upon request of the debtor, trustee, or holder of an unsecured claim, and does not mention a secured creditor, the Court does not find such an omission precludes modification of a secured claim, to the extent that the modification complies with the requirements of Section 1329.

car. to Boatmen's and (probably) discharge the deficiency is further evidence that Congress contemplated modification of a Chapter 13 plan to permit the surrender of collateral to the holder of an allowed secured claim.

*Jock,* 95 B.R. at 78. The Court disagrees with such a rationalization and follows the analysis in *In re Holt,* 136 B.R. 260 (Bankr.D.Idaho 1992), which found that

it does not appear to be fair and equitable to allow a debtor the continued ability to elect to retain or return secured property during the full term of the plan. ·

It is doubtful Congress intended to afford .the debtor the options available under 11 U.S.C. § 1325(a)(5)(B) and (C) throughout the life of the plan. 11 U.S.C. § 1329(a)(1) ought to be limited to adjustments in amounts of payments under the plan as opposed to material changes in the treatment of secured creditors.

*Holt,* 136 B.R. at 260–61. *Accord, Coleman,* 231 B.R. at 400.

The Court also notes that Chapter 13 is generally viewed as a more favorable option to debtors rather than Chapter 7, and thus, the debtor may have chosen Chapter 13 status rather than Chapter 7 to benefit herself. *See Coleman,* 231 B.R. at 401 (rejecting the reasoning in *Jock* on the basis that "[c]onversion or dismissal, while effectively allowing the debtor to reclassify a secured creditor's claim, also exposes the debtor to other risks and responsibilities, whereas no such tradeoff exists if the debtor is allowed to simply modify the plan").

For example, if the debtor had chosen Chapter 7, she would not have been able to keep any nonexempt property, which may include her house and automobile, and would have been forced to turn her property over to the Chapter 7 trustee.[10] Moreover, she would not be able to receive another discharge for at least six years. 11 U.S.C. § 727(a)(8). Contrary to the more onerous burdens of Chapter 7, under Chapter 13, a debtor may retain all personal and real property, including her house and car, and restructure her debts to make monthly payments as outlined by the Chapter 13 plan. In addition, future potential creditors may be more inclined to extend credit to a Chapter 13 debtor who is willing to repay her debts rather than to a Chapter 7 debtor. Therefore, the Court rejects the *Jock* court's quick comparison of what is permitted under Chapter 7 to what, therefore, *should be* permitted under Chapter 13.

Accordingly, based on the cases cited above and the Court's own analysis of Section 1329, the Court finds that the debtor's proposed modification is not authorized under Section 1329.[11]

---

**10.** Although Chapter 7 is designed to eliminate debts and allow the debtor a fresh start, there are 18 exceptions establishing categories of certain debts that are nondischargeable. *See* 11 U.S.C. § 523(a).

**11.** The Court acknowledges that the debtor cites to *In re Williams,* 108 B.R. 119 (Bankr. N.D.Miss.1989) and *In re Stone,* 91 B.R. ·423 (Bankr.N.D.Ohio 1988), in which the bankruptcy courts allowed collateral to be returned and the remaining balance to be reclassified to an unsecured claim. However, the Court finds that *Williams* is ,distinguishable from the instant case in that at the time the debtors' Chapter 13 plan was confirmed in *Williams,* the debtors believed that the indebtedness owed to the creditor was secured by their principal place of residence. The debtors subsequently learned that the indebt-

edness was secured by a rental house and thus sought a modification of the creditor's second deed of trust. *Williams,* 108 B.R. at 120. The facts of the instant case are completely different from *Williams.* Additionally, even though the facts of *Stone* are similar to the facts of this case (although in *Stone* the debtor sought to abandon the vehicle after the other debtor, his wife, died and not because of alleged mechanical problems with the vehicle), the Court disagrees with the *Stone* court's statutory interpretation of Section 1329(a)(3), supporting its decision:

Furthermore, Sec. 1329(a)(3) permits a debtor to request modification of a Plan in order to "alter the amount of the distribution to a creditor...." The amount of distribution to a creditor can be altered not only by reducing the amount paid to a

## IV.

Based on its de novo review, the Court finds that the bankruptcy court's decision should be reversed. Accordingly, this case shall be remanded to the bankruptcy court for disposition in accordance with this decision.[12]

An appropriate order will be entered.

creditor due to payments received from outside the Plan, but also by reclassifying a previously secured claim as an unsecured claim.

*Stone*, 91 B.R. at 425. A plain reading of Section 1329(a)(3) allows for the amount of distribution to a creditor to be altered to take into account payment of the claim from outside the plan, but says nothing about reclassifying a previously secured claim to an unsecured claim. *See Coleman*, 231 B.R. at 400 (finding that such an interpretation "reaches beyond the text of the statute. Section 1329(a)(3) permits a reduction in the distribution under the plan, but the reduction is limited to the amount of payments recovered from another source .... the secured status of the balance of the claim is unaffected").

12. The Court notes that there was a very brief discussion at oral argument that a possible option under Section 1329 might be to reduce the debtor's monthly payment so that she could replace the engine in the automobile and make any other necessary repairs, and then extend the time for making such monthly payments to the creditor. At the hearing, the creditor seemed to agree with such a modification to the plan, which presumably would be permitted under Section 1329(a)(1) and (2). Such an option may merit consideration by the bankruptcy court upon remand of this case.