2RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0376P (6th Cir.)
File Name: 00a0376p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: SAHNICA DENISE
NOLAN,

                  *Debtor.*

       No. 99-5676

_____

CHRYSLER FINANCIAL
CORPORATION,

               *Appellee,*

    *v.*

SAHNICA DENISE NOLAN,

              *Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-01070—Thomas A. Higgins, District Judge.

Submitted: June 13, 2000

Decided and Filed: October 24, 2000

Before:  KRUPANSKY, NORRIS, and SUHRHEINRICH,
Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:** Thomas F. Bloom, Nashville, Tennessee, Maria M. Salas, Edgar M. Rothschild III, ROTHSCHILD & ASSOCIATES, Nashville, Tennessee, for Appellant. Stephen P. Hale, John W. Campbell, HALE, HEADRICK, DEWEY & WOLF, Memphis, Tennessee, for Appellee.

_____

**OPINION**

_____

ALAN E. NORRIS, Circuit Judge.  On August 22, 1997, Sahnica Denise Nolan filed a petition for relief under Chapter 13 of the Bankruptcy Code.  Chapter 13 permits a debtor with regular income to propose a repayment plan extending and/or reducing the balance of her obligations, thereby averting a loss of assets through Chapter 7 liquidation.  Discharge of a portion of the debt is granted after a Chapter 13 debtor has complied with a court-confirmed repayment plan.  Prior to confirmation of Nolan's proposed plan, Chrysler Financial Corporation filed a proof of claim showing that Nolan owed it $12,291.45 on an installment contract for the purchase of a 1995 Mitsubishi Mirage automobile.   On September 23, 1997, the bankruptcy court confirmed Nolan's Chapter 13 plan, which took into account Chrysler's claim.  Under the plan, Chrysler's secured claim on the automobile was for $8200, with interest at ten percent per annum.  Of Nolan's monthly payments under the plan, $207.97 per month was to be applied toward the secured claim.  The unsecured portion of Chrysler's claim, $4091.45, would be paid off on a cents-on-the-dollar basis from Nolan's installments under the plan, pursuant to 11 U.S.C. § 1329(a)(1).

cannot alter a *claim* (a right to a remedy or payment of a certain total amount), but can extend or compress payments and reduce or increase the *amount* of the delivery of value planned as an eventual satisfaction for the creditor's claim. [13]

We hold that a debtor cannot modify a plan under section 1329(a) by: 1) surrendering the collateral to a creditor; 2) having the creditor sell the collateral and apply the proceeds toward the claim; and 3) having any deficiency classified as an unsecured claim.  *See Coleman*, 231 B.R. at 398.   Section 1329(a) only permits modification of the *amount* and *timing* of *payments*, not the total *amount* of the *claim*.  This principle holds true as to the portion of a claim that is secured, where the claim is partially instead of fully secured. [14]

**II.**

We **affirm** the district court's reversal of the bankruptcy court, and **remand** this case to the bankruptcy court for further proceedings.

_____

[13] Since Nolan's modification is not allowed under section 1329(a), section 1329(b)(1) does not come into play.

[14] Contrary to Nolan's assertions, having one partially secured claim is not the same as having two separate claims with one claim secured and the other unsecured.  However, it appears Nolan is correct in observing that the district court should have said that Chrysler is "partially secured on one claim instead of secured on only some of a number of multiple claims" rather than indicating that Chrysler is "fully secured."  *See Chrysler Fin. Corp.*, 234 B.R. at 394 n.4.

"claim."[11]    There is no reason to suppose that Congress intended in section 1329 to disregard the ordinary common law[12] meaning of the term "payment," which is "the delivery of money or other value by a debtor to a creditor." BLACK'S LAW DICTIONARY 1129 (6th ed. 1990). Furthermore, if the term "payments" in section 1329(a) referred to the secured claim itself rather than to individual payments, the separate use of "claims" in section 1329(a)(3) would be superfluous. Read with the benefit of proper term definitions, section 1329 clearly indicates that modifications after plan confirmation

---

[11]*See, e.g.,* 11 U.S.C. § 361(1) (1993) (emphasis added) ("When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by . . . requiring the trustee to make a cash *payment* or periodic cash *payments* to such entity, to the extent that the stay . . . results in a decrease in the value of such entity's interest in such property"); 11 U.S.C. § 362(d)(3)(B) (1993) (emphasis added) ("the debtor has commenced monthly *payments* to each creditor whose claim is secured by such real estate[,] . . . which *payments* are in an amount equal to interest at a current fair market rate on the value of the creditor's interest in the real estate").

[12]*See Beck v. Prupis*, 120 S. Ct. 1608, 1613-14 (2000):

> As we have said, when Congress uses language with a settled meaning at common law, Congress  "presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.  In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them." *Morissette v. United States*, 342 U.S. 246, 263 (1952).

Contrary to Nolan's unpersuasive rebuttal to the "plain language" argument, which asserts that the meaning Chrysler ascribes to the Code constitutes "raw, unsupported speculation" about congressional intent, it is *Nolan's* burden to demonstrate a congressional intent that rebuts creditor's interpretation of the statute.  This is so because Chrysler's interpretation is in harmony with the common law and must be presumed correct in the absence of a specific contrary statutory definition. Chrysler's interpretation does not, as Nolan asserts, require the court to "insert" the "very important word individual" into section 1329(a)(1).

---

On August 26, 1998, Nolan filed a motion to modify her plan and incur credit.  Specifically, she sought permission to surrender her vehicle to Chrysler, reclassify the deficiency owed on the vehicle as an unsecured claim, and incur credit in the amount of $10,000 to purchase another car.  According to Nolan, her current automobile no longer provided dependable transportation.  Chrysler objected to the motion on the ground that section 1329 of the Bankruptcy Code does not allow a debtor to reclassify a secured claim as an unsecured debt absent a good faith showing of unanticipated substantial change in circumstances.  Chrysler contended that Nolan had not acted in good faith because she had failed to properly maintain her vehicle.

On October 19, 1998, a hearing was held before the bankruptcy court in which Nolan testified that she had placed 100,000 miles on the vehicle in three years (an average of 2777.77 miles per month), and had changed the oil three times between February and August of 1998 (she could produce documentation for only two changes).  Following a hearing, the bankruptcy court granted her motion, finding that she did not act in bad faith.

Chrysler appealed to the district court, which reversed. *Chrysler Fin. Corp. v. Nolan*, 234 B.R. 390 (M.D. Tenn. 1999). It did not disturb the bankruptcy court's factual finding as to the good faith of Nolan. Rather, it held that as a matter of law 11 U.S.C. § 1329(a)[1] did not permit Nolan to modify the plan by surrendering collateral to a secured creditor and reclassifying any deficiency as an unsecured claim.

Nolan now appeals to this court.

## I.

Chapter 13 of the Bankruptcy Code, entitled "Adjustments of debts of an individual with regular income," was originally adopted to address consumer credit loss during the Great Depression by providing a completely voluntary proceeding for consumers to amortize their debts out of future earnings. *See* David S. Cartee, Comment, *Surrendering Collateral Under Section 1329: Can the Debtor Have Her Cake and Eat*

---

[1] **11 U.S.C. § 1329. Modification of plan after confirmation**

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to —

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

evading the tradeoff risks and responsibilities attending conversion or dismissal under Chapter 7. *See Chrysler Fin. Corp.*, 234 B.R. at 397 (citation omitted) (Chapter 7 alternative requires debtor to surrender nonexempt property to a trustee, and to lose opportunity for discharge for at least six years; Chapter 13 avoids these onerous burdens by allowing debtor to retain all personal and real property, to restructure debts, and to enjoy greater likelihood of future credit opportunities). These inequities are further indications Congress did not intend the resolution reached in *Jock*.

Fifth, *Jock*'s interpretation is at odds with the plain language of section 1329. "This section does not state that the plan may be modified to increase or reduce the amount of *claims*. This is of significance in relation to secured claims." *Banks*, 161 B.R. at 378 (emphasis added). *Jock* fails to note that the terms "claim" and "payment" have two different meanings in the Bankruptcy Code.

Under the Code,

"[C]laim" means–

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

*See Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (quoting 11 U.S.C. § 101(5)). The term "claim" is consistently employed in the Code. *See* 11 U.S.C. § 101(5) (defining "claim"). Although "payment" is not defined in the Code, usage of the term is also consistent throughout the Code and reflects a meaning different from the term

latitude to subject the creditor to their whims throughout the life of the plan. We further note that under the *Jock* approach, debtors would obtain a *double* reduction in debt in many cases, because the creditor already experiences a cram down in valuation at the time of confirmation. *See Chrysler Fin. Corp.*, 234 B.R. at 396 (quoting *Banks*, 161 B.R. at 379). There is no indication that Congress intended to allow debtors to reap a windfall by employing a subterfuge that unfairly shifts away depreciation, deficiency, and risk voluntarily assumed by the debtor through her confirmation of the Chapter 13 plan.[10]

Fourth, only the debtor, the trustee, and holders of unsecured claims are permitted to bring a motion to modify a plan pursuant to section 1329(a). The *Jock* interpretation would create an inequitable situation where the secured creditor could not seek to reclassify its claim in the event that collateral *appreciated*, even though the debtor could revalue or reclassify the claim whenever the collateral *depreciated*. *See Coleman*, 231 B.R. at 400. Furthermore, allowing Chapter 13 modifications would permit the debtor to reclassify a secured creditor's claim while simultaneously

_____

[10]Chrysler also invokes the Fifth Amendment, which provides that "No person shall . . . be deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. The district court did not reach the Fifth Amendment argument. *Chrysler Fin. Corp.*, 234 B.R. at 392 n.2. We think Chrysler prevails for reasons related to congressional intent regarding process, policy, and finality, as reflected in the Code, not because of a constitutional limitation. Congress has explicit authority to allow and regulate bankruptcy. U.S. CONST. art. I, § 8, cl. 4. Every bankruptcy involves a "transfer" of private property from a creditor to a debtor, in the sense that a creditor is involuntarily deprived of a previously-vested, legally-enforceable debtor obligation to return borrowed creditor property. However, mere reconciliation of debts among private entities does not normally constitute taking private property for *public use*. A bankruptcy court does not instigate specific transfers of property with the objective of bestowing direct or indirect benefits on the public that are unrelated to bankruptcy policy. Our holding and judgment in this case should not be construed to rest upon any Fifth Amendment limitation of congressional authority.

*It Too?*, 12 BANKR. DEVS. J. 501, 505 (1996)(citing 11 U.S.C. § 1301 et seq. (1994); 5 COLLIER ON BANKRUPTCY ¶ 1300.01, at 1300-11 to 1300-12 (15th ed. 1995)). In its present version, Chapter 13 allows individual debtors to reorganize with a repayment plan as an alternative to seeking a complete discharge of debts through the Chapter 7 bankruptcy liquidation process. Since a repayment plan may prove to be unsatisfactory, section 1329 of the Code allows modification of a Chapter 13 plan under certain circumstances. 11 U.S.C. § 1329 (1993). Section 1329 must be interpreted in conjunction with 11 U.S.C. §§ 1322(b),[2] 1325(a)[3],

_____

[2]**11 U.S.C. § 1322.  Contents of plan**

. . . .

(b) Subject to subsections (a) and (c) of this section, the plan may —

. . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

. . . .

(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor[.]

[3]**11 U.S.C. § 1325. Confirmation of plan**

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid

on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan —

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim;  and

 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;  or

(C) the debtor surrenders the property securing such claim to such holder;  and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim;  or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended —

(A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made;  and

unsecured claim as measured by any unpaid deficiency.  This would negate the requirement of section 1325(a)(5)(B)(ii) that a plan is not to be confirmed unless the property to be distributed on account of a claim is not less than the allowed amount of the claim.  *See Chrysler Fin. Corp.*, 234 B.R. at 395 (quoting *Dunlap*, 215 B.R. at 870).

Third, proposed modification would contravene section 1327(a), because a contrary interpretation postulates an unlikely congressional intent to give debtors the option to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset.  *See Coleman*, 231 B.R. at 400.  The court in *Banks* saliently articulated the injustice of such a maneuver:

Code § 1329(a) basically authorizes the amendment of a confirmed plan so as to change (1) the amount; or (2) the time for payments "on claims of a particular class provided for by the plan." The boldest and most frequent attempt by debtors to use the postconfirmation modification to alter the treatment of secured claims occurs when the collateral no longer appears to have a value which justifies full payment of the balance of the secured claim-- in contrast with the composition percent being paid on unsecured claims. The collateral having lost its attractiveness, the debtor proposes an amendment to the plan so as (1) to surrender the now-unattractive collateral to the creditor; (2) to reduce the unpaid balance of the secured claim to reflect the now-diminished value of the collateral; (3) to have that reduced secured balance satisfied by the surrender of the collateral; (4) to have the remaining balance of the secured claim converted to an unsecured claim; and (5) to have this balance of the claim satisfied by the 5%, 17%, or whatever percent payment provided for unsecured claims--all over the objection of the holder of the secured claim.

*Banks*, 161 B.R. at 377 (citation omitted).  We join the *Banks* court in rejecting the notion that debtors have such wide

section 1329(a).[8]   *See id.* at 394-95 (quoting *Taylor*, 99 B.R. at 905 n.3).  Section 1329(a)(1) should not be read so broadly as to authorize the reclassification of claims.  *See Coleman*, 231 B.R. at 400.

Second, the proposed modification would violate section 1325(a)(5)(B), which mandates that a secured claim is fixed in amount and status and must be paid in full once it has been allowed.[9]  *See* 11 U.S.C. § 1325(a)(5)(B)(ii) (1993).  Debtors seeking modification are attempting to bifurcate a claim that has already been classified as fully secured into a secured claim as measured by the collateral's depreciated value and an

---

[8]We note that 11 U.S.C. § 1325(a)(5)(C) apparently does allow a surrender of collateral, but only pre-confirmation.  For section 1325(a)(5)(B)(ii) to provide any protection to the creditor when the debtor chooses to retain her collateral, the secured claim must not be subject to modification throughout the life of the plan.

Section 1329(b)(1) references not only section 1325(a), but also sections 1322(a), 1322(b), and 1323(c).  In doing so, section 1329(b)(1) indicates that a plan as modified must still comply with requirements for an original plan.

[9]Furthermore, as noted by the district court, *Chrysler Fin. Corp.*, 234 B.R. at 396 (citations omitted):

[U]nder Section 1325(a)(5), "the debtor's proposed Chapter 13 plan must either provide that the secured creditor retain its lien and be paid the value of its claim over the life of the plan or, in the alternative, surrender the secured property."  Because the debtor chose to keep possession of the [collateral] rather than allow [creditor] to recover [it] under Section 1325(a)(5) and was, thus, bound by that decision under Section 1327, the court found that "[t]he interrelationship of §§ 1325(a)(5) and 1327 of the Code" compelled it to deny the debtor's proposed modification of the plan.

That the debtor is given the option to surrender prior to confirmation does not establish that she retains this right after confirmation when the collateral has significantly depreciated.  Section 1325(a)(5)(C), read in conjunction with sections 1325(a)(5)(A) and (B) and 1325(a)(6), clearly permits only *pre-confirmation* surrenders.  Once the plan is confirmed, it is impermissible to assert a continued option to surrender during the life of the plan.

and 1327(a).[4]

There has been a debate over whether section 1329 allows a debtor to modify a confirmed plan to surrender collateral for a secured claim (the value of which typically will have been significantly reduced) and then reclassify any deficiency as an allowed, unsecured claim to be paid back at the general pennies-on-the-dollar rate set forth in the plan for unsecured debts.  *See* Cartee, *supra,* 501-02 & 502 n.4 (citing contrasting holdings of district courts).  This appeal presents an issue of first impression for the Courts of Appeals, while there is a clear and fairly even split of authority amongst the federal district courts.  *Cf. Chrysler Fin. Corp.*, 234 B.R. at 396-97; Cartee, *supra*, at 501-02, 511, 515, 519-20.  The bankruptcy court's interpretation of section 1329(a)(1) is reviewed *de novo*.  *See Palmer v. United States (In re Palmer),* No. 99-3257, 2000 WL 967913, at *2 (6th Cir. July 14, 2000).

Nolan argues for an interpretation of section 1329 that has been accepted by a sizable minority of the district courts,[5]

---

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

(C) After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee.

[4]**11 U.S.C. § 1327.  Effect of confirmation**

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

[5]*See, e.g., Day v. Systems & Servs. Techs., Inc.* (*In re Day*), 247 B.R. 898 (Bankr. M.D. Ga. 2000); *In re Anderson*, 153 B.R. 527 (Bankr. M.D. Tenn. 1993); *In re Rimmer*, 143 B.R. 871 (Bankr. W.D. Tenn. 1992); *In re Frost*, 96 B.R. 804 (Bankr. S.D. Ohio 1989).

following the rationale of *In re Jock*, 95 B.R. 75 (Bankr. M.D. Tenn. 1989). Under the *Jock* interpretation, a debtor can modify a plan under section 1329(a) by: 1) surrendering collateral to a creditor; 2) allowing the creditor to sell the collateral and apply the proceeds toward the claim; and 3) classifying any remaining deficiency as an unsecured claim. *See Jock*, 95 B.R. at 76-77; *see also Chrysler Fin. Corp.*, 234 B.R. at 394. The rationale is that the "proposed modification would 'increase or reduce the amount of payments on claims of a particular class provided for in the plan' within the meaning of § 1329(a)(1)." *Jock*, 95 B.R. at 76. Under *Jock*, "[a] Chapter 13 debtor can use the permitted [original] plan provisions described in § 1322(b), subject to the confirmation requirements of § 1325(a), to modify a confirmed Chapter 13 plan under § 1329(a)." *Id.*

*Jock* rests on four supporting principles. First, each secured claim is separately classified in a Chapter 13 case,[6] and therefore subject to modification under section 1329(a)(1). *See Jock*, 95 B.R. at 76. Second, under 11 U.S.C. § 1329(b)(1), both the mandatory and permissive provisions of a Chapter 13 plan found in 11 U.S.C. §§ 1322(a) and (b) and the confirmation requirements of 11 U.S.C. § 1325(a) apply to impose limits upon any post-confirmation section 1329(a) modification of a Chapter 13 plan. *See Chrysler Fin. Corp.*, 234 B.R. at 394 (quoting *Jock*, 95 B.R. at 77). Third, under section 1322(b)(8), a Chapter 13 debtor is permitted to "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor," while section 1325(a)(5)(C) permits the debtor to surrender the property securing a claim in order to satisfy an "allowed secured claim provided for by the plan." *Jock*, 95 B.R. at 77. Fourth, the incorporation of sections 1322(b)(8) and

---

[6] The district court in the case at bar agreed that each secured creditor can be treated differently  because each is a separate class of the plan given unique individualized treatment under section 1322(a)(3). *Chrysler Fin. Corp.*, 234 B.R. at 393. However, the court did not agree that such treatment means each secured claim is always separately classified (a logical predicate to permitting the modification sought by debtor). *Id.*

1325(a)(5)(C) into the standards for post-confirmation modification in section 1329 empower the Chapter 13 debtor to satisfy the creditor's secured claim *either* by A) surrendering the collateral during the confirmation of the original plan, *or* B) *modifying* the *confirmed* plan to allow surrender of the collateral. *See id.* The distribution to a creditor can be altered by reducing the amount paid to the creditor from outside the plan, or by reclassifying a secured claim as an unsecured claim. *See Chrysler Fin. Corp.*, 234 B.R. at 397 n.11 (quoting *In re Stone*, 91 B.R. 423, 425 (Bankr. N.D. Ohio 1988)).

We reject *Jock's* interpretation of section 1329. The district court correctly reversed the bankruptcy court under an alternative interpretation, adopted by *In re Coleman,*, 231 B.R. 397 (Bankr. S.D. Ga. 1999).[7] Five fundamental deficiencies of the *Jock* position persuade us to reject it in this circuit.

First, section 1329(a) does not expressly allow the debtor to alter, reduce or reclassify a previously allowed secured claim. 11 U.S.C. § 1329(a) (1993). Instead, section 1329(a)(1) only affords the debtor a right to request alteration of the amount or timing of specific payments. A debtor cannot use section 1329(b)(1) to enlarge the modifications permitted by section 1329(a), since section 1329(b)(1) does not apply unless the proposed modification first complies with section 1329(a)(1). *See Chrysler Fin. Corp.* at 394 (quoting *Taylor*, 99 B.R. at 904-05). A modification that reduces the claim of a secured debtor would add a claim to the class of unsecured creditors, a change prohibited by

---

[7] *See, e.g., In re Meeks*, 237 B.R. 856 (Bankr. M.D. Fla. 1999); *In re Dunlap*, 215 B.R. 867 (Bankr. E.D. Ark. 1997); *In re Banks*, 161 B.R. 375 (Bankr. S.D. Miss. 1993); *In re Holt*, 136 B.R. 260 (Bankr. D. Idaho 1992); *Sharpe v. Ford Motor Credit Co. (In re Sharpe)*, 122 B.R. 708 (E.D. Tenn. 1991); *In re Taylor*, 99 B.R. 902 (Bankr. C.D. Ill. 1989); *In re Abercrombie*, 39 B.R. 178 (Bankr. N.D. Ga. 1984).