**In re Steve Edward ZIEDER and Daphne Lorraine Zieder, Debtors.**

**No. 99–02044–PHX–RJH.**

United States Bankruptcy Court, D. Arizona.

June 4, 2001.

Scott A. Lieske, Doney & Associates, Tempe, AZ, for Debtors.

Alan M. Levinsky, Anderson, Brody, Levinson Weiser & Horwitz, P.A., Phoenix, AZ, for Ford Motor Credit Company.

Ronald Hoffbauer, Phoenix, AZ, for Chapter 13 Trustee.

### ORDER APPROVING PLAN MODIFICATION

RANDOLPH J. HAINES, Bankruptcy Judge.

After confirming a chapter 13 plan that treated Ford Motor Credit Company ("Ford") as a secured creditor, Debtors voluntarily surrendered the vehicle and

moved to modify their plan to eliminate the payments on the secured debt. This Court concludes such modification is both appropriate and permitted by 11 U.S.C. § 1329.

**Factual and Procedural Background.**

The Debtors' plan confirmed in December, 1999, treated Ford as a secured creditor with a secured claim of $18,062, secured by a 1997 Ford F150 pickup truck, and as an unsecured creditor with a claim of $4,468. The order confirming the plan, which was stipulated to by Ford, also required Ford to be paid $200 per month from each plan payment, commencing immediately, "to assure adequate protection of the security interest of Ford." The payment schedule incorporated as part of that order showed Ford as receiving $200 per month for the first 27 months of the plan, ending in June 2001, and then payments increasing from $371 to $985 for months 28 through 60.

In March of 2000 Debtors sought a moratorium on plan payments for the period September 1999 through February 2000, to permit them to catch up on postpetition defaults on their home mortgage. Ford stipulated with Debtors to receive adequate protection payments for the moratorium period of $646 and $458 to be paid in February and March, 2000. Debtors also modified their plan to reduce plan payments to $891, instead of $1,104 for the period March 2000 to March 2001, along with substantial increases in plan payments for months 37 through 60 of the plan, plus an additional $50 per month on the home mortgage to cure arrearages. The payment schedule attached to that order showed Ford receiving $200 per month payments until month 37, ending in April of 2002, and then payments increasing from $592 to $1052 for months 38 through 60.

In late 2000, however, Debtors' minor son had an accident in their other vehicle, a 1996 Ford Explorer, which caused the Debtors to spend $1,100 to cover the insurance deductible, and to fall behind on the home mortgage and plan payments.

To reduce their monthly payment obligations, Debtors moved in December, 2000, to voluntarily surrender the F150 pickup truck to Ford, which sold it at auction for $9,350. Because its secured claim had been paid down to $16,280 by that time, the balance then remaining due on its previously allowed secured claim was $6,930.

**The Modification Motion and Issue**

Debtors' second motion to modify their plan seeks to terminate any secured debt payment to Ford and to have the balance of Ford's previously secured claim added to its previously allowed unsecured claim to share pro rata with the payments to other unsecured creditors. Ford has objected to the proposed modification, arguing that its claim must continue to be paid as a secured claim, notwithstanding the lack of any collateral securing the debt. Ford does not contend that Debtors have acted "in anything but good faith" (Ford Reply Memorandum at 2).

The issue is whether 11 U.S.C. § 1329 permits the modification Debtors seek. There is a split of authority in other circuits but no reported authority in this circuit. This Court concludes that the modification is permissible under § 1329, that payments on Ford's previously secured claim be reduced to zero, and that Ford's unsecured claim be increased by $6,930 and paid under the plan the same as all other allowed unsecured claims.

**Analysis**

The only circuit court authority on this issue is the Sixth Circuit's recent decision in *In re Nolan*, 232 F.3d 528 (6th Cir.

2000). *Nolan* held that "section 1329(a) does not expressly allow the debtor to alter, reduce or reclassify a previously allowed secured claim," but merely "affords the debtor a right to request alteration of the amount or timing of specific payments." *Id.* at 532.

While it is certainly true that § 1329(a) expressly deals only with modifications of "payments on claims" and "the amount of the distribution to a creditor," and therefore does not expressly refer to the modification or reclassification of the claims on which such payments are made, other provisions of the Bankruptcy Code do. Section 502(j) provides that "A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." And § 506(a) provides that an allowed claim "is a secured claim to the extent of the value of such creditor's interest in the estate's interest in" the collateral securing the claim, and "is an unsecured claim to the extent that the value [of the collateral] is less than the amount of such allowed claim."

■ When these provisions are applied to the facts of this case, they compel the conclusion that Ford's remaining claim must be reconsidered for cause and, when reconsidered, it becomes an unsecured claim by operation of law. There is now no collateral securing Ford's claim. Consequently § 506(a) by its own express terms makes Ford's entire claim an unsecured claim. There is no provision of the Code, and neither Ford nor *Nolan* suggests there is, that gives a creditor a secured claim without any collateral. Nor do they suggest that the liquidation of the collateral is not adequate cause for reconsideration pursuant to § 502(j).

■ Section 502(j) permits reconsideration of claims "according to the equities of the case." No language in § 502(j) or

Rule 3008 limits such reconsideration by confirmation of a plan. To the contrary, because the Code provision deals extensively with the effect such reconsideration might have on distributions already made on claims, it contemplates that such reconsideration might occur after confirmation. Case law confirms that bankruptcy courts have wide discretion in determining what will constitute adequate "cause" for reconsideration of claims, and that such reconsideration can occur even after confirmation of a plan. *See, e.g., In re International Yacht & Tennis, Inc.,* 922 F.2d 659, 662 n. 5 (11th Cir.1991)(noting the probable intent of a 1984 amendment to § 502(j) was to permit reconsideration of claims after a case has been closed and reopened); *In re Gomez,* 250 B.R. 397, 399–400 (Bankr.M.D.Fla.1999)(reconsideration of claim permissible after confirmation of chapter 13 plan because § 502(j) creates a narrow exception to the res judicata effect of § 1327).

On the facts here, this Court concludes that liquidation of the collateral by the secured creditor is adequate cause to reconsider a previously allowed secured claim, even after confirmation of the plan chapter 13 plan and commencement of payments. Both § 506(a) and the equities of the case dictate that Ford's secured claim must now be disallowed.

As of this point in the analysis, there has been no modification of the confirmed plan. Ford's claim, however, has become a wholly unsecured claim by operation of §§ 502(j) and 506(a). Nor is any modification of the plan necessary to increase Ford's unsecured claim by the amount of the deficiency, $6,930. The plan already defines a class of unsecured claims, in which Ford already had a claim of $4,468. The plan itself does not establish the amounts of the claims held by creditors in this class. It merely provides: "Unse-

cured claims shall be paid the balance of payments under the plan, pro rata, without interest. Any amounts not paid shall be discharged. A creditor filing a secured Proof of Claim but not paid as secured by this plan shall be classified and paid as an unsecured claim in accordance with this plan." Such plan language is sufficient to deal with Ford's increased unsecured claim without requiring any modification.

■ So what modification is required? Simply a modification to reduce to zero the scheduled payments on Ford's secured claim, as set forth in the payment schedule attached to the December, 1999 Order Confirming Chapter 13 Plan and in the amended schedule attached to the July 10, 2000 Order Modifying Chapter 13 Plan. This modification is not the reclassification of a claim, which *Nolan* concluded is not permitted by § 1329, but does "reduce the amount of payments on claims of a particular class provided for by the plan," which is permitted by both the express language of § 1329 and by the *Nolan* opinion. This modification is also permitted by the express terms § 1329(a)(3) because it simply alters the distribution to Ford to the extent necessary to take account of the satisfaction of its secured claim by payment other than under the plan, *i.e.*, by surrender of the collateral and application of § 506(a). When this simple modification of the scheduled payments is made, no other modification is necessary, nor any "reclassification" of claims, because the confirmed plan already provides that any allegedly secured claim that is "not paid as secured by this plan shall be classified and paid as an unsecured claim in accordance with this plan."

Because the modification of the amount of the secured claim occurs pursuant to §§ 502(j) and 506(a), *Nolan*'s conclusion that § 1329 does not permit claim modifications or claim reclassifications, as distin-

guished from payment modifications, has no significance even if correct. This resolves the first and fifth "fundamental deficiencies" the *Nolan* court found with the similar modification proposed in that case, that the plain language of § 1329 does not permit the reclassification of claims or a modification of the amount of claims, as distinguished from payments. *Id.* at 532–33 & 534–35.

*Nolan*'s other three "deficiencies" similarly evaporate under other applicable Code provisions.

First, the plan as modified does not violate the requirement of § 1325(a)(5), because the value of the property distributed to Ford equals the amount of Ford's allowed secured claim, once it is properly reconsidered pursuant to §§ 502(j) and 506(a). And in any event § 1325(a)(5) expressly provides for the alternative of surrendering the collateral to the secured creditor, so that occurrence can hardly constitute a violation of § 1325(a)(5).

Second, the *modification* does not "shift the burden of depreciation to a secured creditor." That is a burden that a secured creditor always has, simply by virtue of §§ 502(j) and 506(a). It is also a risk the secured creditor always runs by virtue of § 1307(a), because a chapter 13 debtor can always convert to chapter 7 and surrender collateral to a trustee regardless of whether it has depreciated since the case began, or dismiss this case, surrender the collateral and file a new chapter 13. Debtors who have difficulty making plan payments should be encouraged to reduce expenses, such as by surrendering a vehicle, rather than dismissing and refiling, or simply filing a chapter 7.

■ In any event the secured creditor should have objected to confirmation of the plan if the plan payments were insufficient to cover normal depreciation, which is all

that apparently occurred here. If the secured creditor incurs a loss due to normal depreciation upon subsequent surrender of its collateral, that loss occurs not because a burden has been *shifted* to the creditor, but because the creditor failed to carry its burden of objecting to confirmation of a plan that did not cover normal depreciation of its collateral. *In re Townley*, 256 B.R. 697, 700 (Bankr.D.N.J.2000); *In re Jock*, 95 B.R. 75, 78 (Bankr.M.D.Tenn. 1989). And if the excess depreciation is due to some fault of the debtor such as failing to maintain the vehicle adequately, the creditor may have a basis to object to the modification for lack of good faith, but such facts are admittedly not present here.

There is not a "**double** reduction in debt in many cases," as the Nolan court apparently thought, 232 F.3d at 534, but merely a change in the portion of the debt that is secured and the portion that is unsecured. And there is nothing unusual or illegal in this happening more than once; indeed, with depreciating collateral such as a vehicle, § 506(a) contemplates its happening continually, which is why it expressly addresses the possibility of multiple determinations at different times. There is not necessarily any "windfall" to debtors in this process, but rather a benefit to other secured and unsecured creditors due to the debtors' increased likelihood of successfully completing the plan by eliminating the expense of a second vehicle. The only possible windfall would be to the secured creditor if the modification were not permitted and the debtors had to continue making payments on a secured claim that is no longer secured, for a vehicle they no longer have.

Third, the *Nolan* opinion expressed concern for the fairness to creditors whose collateral appreciates. 232 F.3d at 534. This is a hypothetical concern not raised by the facts of either this case or *Nolan*. But there seems little need to be concerned for the secured creditor when a chapter 13 debtor surrenders appreciating collateral. And if the perceived unfairness arises because secured creditors cannot seek plan modifications under § 1329 as can debtors and unsecured creditors, the *Nolan* opinion seems to have overlooked the fact that § 506(a) gives an undersecured creditor, such as exists both here and on the facts in *Nolan*, an unsecured claim that may provide the requisite standing for a motion pursuant to § 1329 on appropriate facts.[1]

■■■ Apparently as an alternative legal theory, Ford asks that its remaining deficiency claim be given administrative priority "for administrative expense caused by failure of adequate protection leading up through the deficiency balance" (sic). Ford Reply Memorandum at 3. But if Ford is relying on § 507(b) as authority to promote its claim to superpriority status, it has not demonstrated that § 363(e) applies postconfirmation, when the protections of §§ 361 and 363 are supplanted by § 1325(a)(5). *Townley, supra,* at 700 ("At confirmation, that right [to adequate protection] is protected by Code section 1325(a)(5)"). Administrative expense status is generally not accorded prepetition secured lenders simply because they did not receive all the payments promised by a plan. *In re Williams*, 246 B.R. 591, 595 (8th Cir. BAP 1999). Ford has not suggested any other authority on which its

---

**1.** Because these facts are not before this Court, this is not intended to imply that any such modification would be appropriate or approved, but merely to note that such un-

dersecured creditors are not prevented from seeking such relief by the language of § 1329 as *Nolan* seemed to suggest.

120

claim could be promoted to priority status to the detriment of other creditors.

**Conclusion**

For these reasons, the Court concludes that *Nolan*'s plain language analysis of § 1329 does not prohibit the modification requested here. To the contrary, it is required by both the equities of the situation and by the plain language of §§ 502(j), 506(a) and 1329. The modification proposed by the Debtor, to eliminate secured debt payments to Ford, will therefore be approved. If the Debtor proceeds with the proposed modification and lodges a form of order approving the second modification to the plan, that order when entered will be the final appealable order on the modification issue.