**In re David MASON, Debtor**

**No. 03–53071–ASW.**

United States Bankruptcy Court,
N.D. California.

Oct. 14, 2004.

David A. Boone, Law Offices of David A. Boone, Inc., San Jose, CA, for Debtor.

Timothy J. Silverman, Solomon, Grindle, Silverman & Spinella, PC, San Diego, CA, for Creditor.

## MEMORANDUM DECISION OVERRULING OBJECTION TO MODIFICATION AND GRANTING DEBTOR'S APPLICATION TO MODIFY PLAN

ARTHUR S. WEISSBRODT,
Bankruptcy Judge.

David Mason ("Debtor") filed a plan ("Plan") in this Chapter 13[1] case and it was confirmed. The Debtor now seeks to modify the Plan, which is opposed by Household Automotive Finance ("Creditor").

The Debtor is represented by David A. Boone, Esq. of the Law Offices of Dave A. Boone, Inc. The Creditor is represented by Timothy J. Silverman, Esq. of Solomon, Grindle, Silverman & Spinella, PC.

The matter has been briefed and argued, and submitted for decision. This Memorandum Decision constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure ("FRBP").

---

1. Unless otherwise noted, all statutory references are to Title 11, United States Code ("Code"), as applicable to cases commenced on May 13, 2003.

## I.

### FACTS

The facts are undisputed.

The Creditor holds a security interest in a 2001 Nisan Extera automobile ("Collateral") that is owned by the Debtor.

The Debtor filed his Chapter 13 petition on May 13, 2003 and his Plan was confirmed on July 28, 2003, without objection by the Creditor.

As to the Creditor, the Plan provides that: the Debtor will make monthly payments of $420 to the Chapter 13 trustee ("Trustee") for fifty-nine months; the Trustee will disburse at least $100 per month plus interest of 10% to the Creditor on account of the Creditor's allowed secured claim; the Creditor will retain its lien on the collateral until its allowed secured claim has been paid; the Creditor's claim will be allowed as a secured one to the extent of the value of the Collateral, which is fixed as $16,005; the Creditor's claim will be treated as an unsecured claim to any other extent, and be paid at the rate of 2%. The Creditor has filed a proof of claim for $25,564.62.

On December 29, 2003, the Debtor filed and served an application ("Application") to modify the Plan. The Application seeks to suspend the monthly payments to the Trustee for September through November 2003, and reduce the amounts of such payments from $420 to $200 as of December 2003. The proposed modification also provides for the Creditor's claim to be treated as an unsecured one to be paid at the rate of 2%, following the Debtor's surrender of the Collateral. In support of the Application, the Debtor has filed a declaration stating that he could not maintain the $420 monthly payments to the Trustee because he had underestimated his other expenses and his income from overtime pay was decreasing. According to the Debtor, the Collateral is undamaged and in good condition, but he "simply cannot afford to keep it" and so told the Creditor that he wanted to surrender it, although the Creditor had taken no steps to recover possession.

## II.

### ANALYSIS

The Creditor argues that § 1329(a) permits modification of a confirmed plan only as to the amount and timing of payments, not with respect to claims that have already been allowed, citing *In re Nolan*, 232 . F.3d 528, 532 (6th Cir.2000) ("*Nolan*"):

> ... section 1329(a) does not expressly allow the debtor to alter, reduce or reclassify a previously allowed secured claim. [citation omitted] Instead, section 1329(a)(1) only affords the debtor a right to request alteration of the amount or timing of specific payments.

The Creditor's position is that its allowed claim must remain a secured one to the extent provided by the Plan even if the Collateral is surrendered post-confirmation. The Creditor points out that it has not sought relief from the automatic stay of § 362(a) to take possession of and liquidate the Collateral, and argues that modification is neither necessary nor permitted until such time as that may occur. Even then, the Creditor urges that the originally secured part of the claim should continue to be treated as secured after being reduced by the proceeds of liquidation, and be paid in full with interest.

The Debtor relies on *In re Zieder*, 263 B.R. 114, 117–118 (Bkrtcy.D.Ariz.2001) ("*Zieder*"), which rejects *Nolan* and explains why the result sought (in that case and in this one) is available under the Code.

While it is certainly true that § 1329(a) expressly deals only with modifications

of "payments on claims" and "the amount of the distribution to a creditor," and therefore does not expressly refer to the modification or reclassification of the claims on which such payments are made, other provisions of the Bankruptcy Code do. Section 502(j) provides that "A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." And § 506(a) provides that an allowed claim "is a secured claim to the extent of the value of such creditor's interest in the estate's interest in" the collateral securing the claim, and "is an unsecured claim to the extent that the value [of the collateral] is less than the amount of such allowed claim." [¶] When these provisions are applied to the facts of this case, they compel the conclusion that [the lienholder's] remaining claim [after surrender of the collateral] must be reconsidered for cause and, when reconsidered, it becomes an unsecured claim by operation of law. There is now no collateral securing [the lienholder's claim]. Consequently § 506(a) by its own express terms makes [the lienholder's] entire claim an unsecured claim. There is no provision of the Code, and neither [the lienholder] nor *Nolan* suggests there is, that gives a creditor a secured claim without any collateral. Nor do they suggest that the liquidation of the collateral is not adequate cause for reconsideration pursuant to § 502(j). [¶] Section 502(j) permits reconsideration of claims "according to the equities of the case." No language in § 502(j) or Rule 3008 limits such reconsideration by confirmation of a plan. To the contrary, because the Code provision deals extensively with the effect such reconsideration might have on distributions already made on claims, it contemplates that such reconsideration

might occur after confirmation. Case law confirms that bankruptcy courts have wide discretion in determining what will constitute adequate "cause" for reconsideration of claims, and that such reconsideration can occur even after confirmation of a plan. *See, e.g., In re International Yacht & Tennis, Inc.*, 922 F.2d 659, 662 n. 5 (11th Cir.1991) (noting the probable intent of a 1984 amendment to § 502(j) was to permit reconsideration of claims after a case has been closed and reopened); *In re Gomez*, 250 B.R. 397, 399–400 (Bankr.M.D.Fla.1999) (reconsideration of claim permissible after confirmation of chapter 13 plan because § 502(j) creates a narrow exception to the *res* judicata effect of § 1327).[¶] On the facts here, this Court concludes that liquidation of the collateral by the secured creditor is adequate cause to reconsider a previously allowed secured claim, even after confirmation of the plan chapter 13 plan [*sic*] and commencement of payments. Both § 506(a) and the equities of the case dictate that [the lienholder's] secured claim must now be disallowed. [¶] As of this point in the analysis, there has been no modification of the confirmed plan. [The lienholder's] claim, however, has become a wholly unsecured claim by operation of §§ 502(j) and 506(a). Nor is any modification of the plan necessary to increase [the lienholder's] unsecured claim by the amount of the deficiency, $6,930. The plan already defines a class of unsecured claims, in which [the lienholder] already had a claim of $4,468. The plan itself does not establish the amounts of the claims held by creditors in this class. It merely provides: "Unsecured claims shall be paid the balance of payments under the plan, *pro rata*, without interest. Any amounts not paid shall be discharged. A creditor filing a secured Proof of Claim but not

paid as secured by this plan shall be classified and paid as an unsecured claim in accordance with this plan." Such plan language is sufficient to deal with [the lienholder's] increased unsecured claim without requiring any modification. [¶] So what modification is required? Simply a modification to reduce to zero the scheduled payments on [the lienholder's] secured claim, as set forth in the payment schedule attached to [previous orders]. This modification is not the reclassification of a claim, which *Nolan* concluded is not permitted by § 1329, but does "reduce the amount of payments on claims of a particular class provided for by the plan," which is permitted by both the express language of § 1329 and by the *Nolan* opinion. This modification is also permitted by the express terms [of] § 1329(a)(3) because it simply alters the distribution to [the lienholder] to the extent necessary to take account of the satisfaction of its secured claim by payment other than under the plan, *i.e.*, by surrender of the collateral and application of § 506(a). When this simple modification of the scheduled payments is made, no other modification is necessary, nor any "reclassification" of claims, because the confirmed plan already provides that any allegedly secured claim that is "not paid as secured by this plan shall be classified and paid as an unsecured claim in accordance with this plan." Because the modification of the amount of the secured claim occurs pursuant to §§ 502(j) and 506(a), *Nolan's* conclusion that

§ 1329 does not permit claim modifications or claim reclassifications, as distinguished from payment modifications, has no significance even if correct.

In *Zieder*, the debtors could no longer afford to pay for their truck and so surrendered it to the undersecured lienholder one year post-confirmation, seeking modification of their plan to reflect that change in their situation—in this case, the Debtor sought modification for the same reason approximately six months post-confirmation. In neither case was there any allegation of bad faith or improper efforts to manipulate the Code.[2] This Court agrees with the *Zieder* Court that, under such circumstances, the Code permits the modification sought.

Modification is governed by § 1329, which provides in its entirety as follows:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

---

**2.** In *Nolan*, the debtor sought to surrender her car to the undersecured lienholder approximately one year post-confirmation because she considered it unreliable. The creditor objected to modification of the plan and alleged, *inter alia*, that the debtor was not acting in good faith because she had failed to maintain the car. Following an evidentiary hearing, the bankruptcy court found no bad

faith. On appeal, the district court did not disturb that finding, but did reverse the bankruptcy court's decision that § 1329 permits modification to affect an allowed secured claim. The debtor appealed to the Sixth Circuit, but the creditor did not raise the issue of bad faith again and it was not considered further.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modifications under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

Subsection (a)(3) applies to the proposed modification in this case. The Plan does not provide for payment of the Creditor's claim other than by distributions of money from the Trustee, but the Debtor has now tendered the Collateral to the Creditor and that is a "payment of such claim other than under the plan".[3] Once the value of the Collateral is applied against the total amount that the Creditor is owed, a deficiency balance will remain, which will not be secured by any property of the estate and which therefore must be an unsecured claim under § 506(a). Taking § 1329(a)(3) and § 506(a) together with § 502(j) (which permits reconsideration of allowed claims at any time for cause and according to the equities of the case), it is clear that the Code does not contemplate treating a claim as secured after the collateral has been surrendered to the lienholder. The Creditor does not contend that the Debtor has done anything even arguably inequitable, such as failing to maintain the Collateral adequately, or using it over a long period of time while it depreciates, or damaging it so as to reduce its value. The fact is that the Debtor was paying the value of the Collateral that existed at commencement of the bankruptcy case (with interest) until he could no longer afford to do so, then tendered surrender of the Collateral intact approximately six months later in partial payment of the total amount owed.

*Nolan* raises three other points that the Creditor does not discuss, but which may be relied upon to some extent. Each of them is considered and rejected by *Zieder,* at 118–119:

First, the plan as modified does not violate the requirement of § 1325(a)(5), because the value of the property distributed to [the lienholder] equals the amount of [the lienholder's] allowed secured claim, once it is properly reconsidered pursuant to §§ 502(j) and 506(a). And in any event § 1325(a)(5) expressly provides for the alternative of surrendering the collateral to the secured creditor, so that occurrence can hardly constitute a violation of § 1325(a)(5). [¶] Second, the modification does not "shift the burden of depreciation to a secured creditor." That is a burden that a secured creditor always has, simply by virtue of §§ 502(j) and 506(a). It is also a risk the secured creditor always runs by virtue of § 1307(a), because a chapter 13 debtor can always convert to chapter 7 and surrender collateral to a trustee regardless of whether it has depreciated since the case began, or dismiss this case, surrender the collateral and file a new chapter 13. Debtors who have difficulty making plan payments should be encouraged to reduce expenses, such as by surrendering a vehicle, rather than dismissing and refiling, or simply filing a

---

**3.** The same form of payment could properly have been provided for in the Plan itself, because § 1322(b)(8) permits "payment of all or part of a claim against the debtor from property of the estate or property of the debtor".

chapter 7.[¶] In any event the secured creditor should have objected to confirmation of the plan if the plan payments were insufficient to cover normal depreciation, which is all that apparently occurred here. If the secured creditor incurs a loss due to normal depreciation upon subsequent surrender of its collateral, that loss occurs not because a burden has been shifted to the creditor, but because the creditor failed to carry its burden of objecting to confirmation of a plan that did not cover normal depreciation of its collateral. [citations omitted] And if the excess depreciation is due to some fault of the debtor such as failing to maintain the vehicle adequately, the creditor may have a basis to object to the modification for lack of good faith, but such facts are admittedly not present here. [¶] There is not a "double reduction in debt in many cases," as the *Nolan* court apparently thought, 232 F.3d at 534, but merely a change in the portion of the debt that is secured and the portion that is unsecured. And there is nothing unusual or illegal in this happening more than once; indeed, with depreciating collateral such as a vehicle, § 506(a) contemplates its happening continually, which is why it expressly addresses the possibility of multiple determinations at different times. There is not necessarily any "windfall" to debtors in this process, but rather a benefit to other secured and unsecured creditors due to the debtors' increased likelihood of successfully completing the plan by eliminating the expense of a second vehicle. The only possible windfall would be to the secured creditor if the modification were not permitted and the debtors had to continue making payments on a secured claim that is no longer secured, for a vehicle they no longer have. [¶] Third, the *Nolan* opinion expressed concern for the fairness to

creditors whose collateral appreciates. 232 F.3d at 534. This is a hypothetical concern not raised by the facts of either this case or *Nolan*. But there seems little need to be concerned for the secured creditor when a chapter 13 debtor surrenders appreciating collateral. And if the perceived unfairness arises because secured creditors cannot seek plan modifications under § 1329 as can debtors and unsecured creditors, the *Nolan* opinion seems to have overlooked the fact that § 506(a) gives an undersecured creditor, such as exists both here and on the facts in *Nolan*, an unsecured claim that may provide the requisite standing for a motion pursuant to § 1329 on appropriate facts. [Footnote 1:] Because these facts are not before this Court, this is not intended to imply that any such modification would be appropriate or approved, but merely to note that such undersecured creditors are not prevented from seeking such relief by the language of § 1329 as Nolan seemed to suggest.

This Court agrees with the *Zieder* Court, both in general and with specific reference to this case. *Nolan* fails to take into account the provisions of § 502(j) for reconsidering allowance and disallowance of claims according to the equities of the case, or the requirement of § 506(a) that a secured claim be supported by collateral in which the bankruptcy estate has an interest. The better approach is that taken by *Zieder*, which considers the Code as a whole rather than viewing § 1329(a) in isolation, and appropriately and neatly reconciles the various overlapping provisions to account for changed circumstances that arise post-confirmation. In this case as in *Zieder*, the proposed modification is available under the Code and warranted by the facts of the case.

## CONCLUSION

For the foregoing reasons, the Creditor's objection to the Debtor's Application to modify the Plan is overruled, and the Application is approved.

Counsel for the Debtor shall submit a form of order so providing, after review as to form by counsel for the Creditor.