DISSENT
KAREN NELSON MOORE, Circuit Judge,
dissenting.
Because I do not believe that Nolan is controlling in this instance, I respectfully dissent. In Nolan, we held that a Chapter 13 debtor cannot modify a confirmed plan under 11 U.S.C. § 1329(a) by voluntarily surrendering the property securing the debt to the creditor, requiring the creditor sell that collateral and apply the sale proceeds toward its secured claim, and classifying any deficiency as an unsecured claim. Chrysler Fin. Corp. v. Nolan (In re Nolan), 232 F.3d 528, 535 (6th Cir.2000). Our decision in Nolan was motivated by our belief that debtors should not have “wide latitude to subject the creditor to their whims throughout the life of the plan” nor the ability to “reap a windfall by employing a subterfuge” by unfairly shifting the costs of depreciation to the creditor. Id. at 534. Our holding in Nolan was narrowly tailored to the particular facts and circumstances oí that case, and therefore I disagree with the majority’s decision to extend its holding beyond those boundaries. Because in this case the collateral was involuntarily taken from the debtor by the creditor’s conscious decision to seek relief from stay and to sell the collateral to satisfy its secured claim, I must dissent from the majority’s decision to extend Nolan. See In re Goos, 253 B.R. 416, 419 n. 5 (Bankr.W.D.Mich.2000)(stating that a creditor-initiated sale may require a different legal analysis than a debtor-initiated surrender).
Our decision in Nolan rejected “a sizable minority” of lower courts that followed the rationale set forth in In re Jock, 95 B.R. 75 (Bankr.M.D.Tenn.1989), which allowed a debtor to initiate surrender of collateral and for any deficiency to be deemed an unsecured claim. In Nolan we explained five “fundamental deficiencies” of following the Jock line of cases in that situation, each of which stemmed from our concern about the debtor’s manipulation of the Bankruptcy Code to surrender the collateral after the collateral has depreciated, thereby unfairly shifting the risk of depreciation to the creditor. Three of the deficiencies that necessitated our conclusion in Nolan related to our disagreement with Jock’s interpretation of § 1329. Nolan, 232 F.3d at 532-35. That provision of the code is not involved here. DaimlerChrysler’s suggestion that a § 1329 modification is implicitly at issue here — that the Trustee’s objection to its attempt to maintain a secured claim after the sale of the collateral is essentially an attempt to modify the plan without a formal § 1329 motion — is not persuasive. Appellee Br. at 25. This case arose not from an attempted modification brought by the debtor or Trustee through a § 1329 motion, but rather from DaimlerChrysler’s § 362 motion to lift the stay and its request therein that any deficiency be classified as a secured claim. Unlike in Nolan, where the creditor would have preferred to continue to receive payments for its secured claim through the plan rather than have the collateral sold, here the creditor was the party moving to initiate the sale. Believing that its interests were not being adequately served through the plan, DaimlerChrysler moved to lift the stay preventing it from repossessing the collateral, thus enabling it to *307 pursue its state-law remedies outside the plan.
The other two deficiencies cited in Nolan were also specific to the debtor-initiated surrender attempted in that case. There we were concerned that the debtor seeking a § 1329 modification in those circumstances may contravene the requirements in §§ 1325(a)(5)(B) and 1327(a) that govern a plan’s confirmation and its res judicata effect. Nolan, 232 F.3d at 533-34. In this case, the debtor did not seek to surrender the collateral nor to disturb the confirmed plan. Instead it was the creditor who decided its interests were better served by obtaining its state-law remedies to repossess the collateral, and therefore the creditor moved to redeem its secured claim outside the plan.
In extending the holding in Nolan to allow a creditor who initiated sale of the collateral to recover any deficiency as a secured claim, the majority entirely relieves the creditor of any obligation to protect its own interests against anticipated depreciation in its pre-confirmation dealings. On the contrary, I believe that “the creditor has the obligation to ensure that as time goes by and, as in this case, payments are not made and it repossesses the collateral, the value of the collateral when liquidated will equal the amount of the remaining claim.” In re Knappen, 281 B.R. 714, 719 (Bankr.D.N.M.2002). Placing the risk of depreciation loss completely on the debtor, as the majority does:
denies that the creditor has an obligation to look out for its own interests, and invites unscrupulous creditors to argue value at their whim after the confirmation hearing. In effect, therefore, the creditor needs to assure that the plan provides for a stream of payments such that at any time the value of the collateral, subject to normal wear and tear, when returned to it and liquidated, will equal the remaining amount of the secured claim.
Id. at 719. DaimlerChrysler had the opportunity to object to confirmation of the plan if it believed that the plan payments, coupled with the sale value of the collateral if repossession became necessary, would be insufficient to cover the costs of normal depreciation. If DaimlerChrysler incurred a loss due to normal depreciation upon the subsequent sale of its collateral, which unlike the creditor in Nolan, it instigated at the timing of its choice, that loss occurred not because the burden of depreciation had been shifted to it, but because it failed to meet its own burden of objecting to confirmation of a plan that did not provide protection from the normal depreciation of the collateral. See In re Zieder, 263 B.R. 114, 118-19 (Bankr.D.Ariz.2001).
In addition to relieving creditors of their obligations to protect their own interests pre-confirmation, the majority’s holding creates a second disincentive for creditors to act diligently. By guaranteeing creditors the payment of the entire amount deemed secured at the time of confirmation regardless of what the sale of collateral brings, the majority eliminates any incentive for creditors who force a sale of collateral to take care to protect the value of the collateral throughout the repossession process. Applying Nolan to the facts in this case allows a creditor to shift the risk of loss totally to the debtor, thereby turning the debtor into a guarantor. Debtors, not creditors, will bear the costs of reckless or careless repossession agents hired by the creditors.
Because I believe that our decision in Nolan does not require us to hold that the post-sale deficiency in this case must be a secured claim, I would instead hold that after a creditor-initiated sale of collateral, any deficiency claim should be reconsidered under 11 U.S.C. § 502(j). Section *308 502(j) states that “[a] claim that has been allowed or disallowed may be reconsidered for canse. A reconsidered claim may be allowed or disallowed according to the equities of the case.” Bankruptcy courts have wide discretion to determine what constitutes cause for reconsideration of claims under § 502(j). Colley v. Nat’l Bank of Texas (In re Colley), 814 F.2d 1008, 1010 (5th Cir.)(calling a bankruptcy court’s discretion to reconsider a claim under § 502(j) “virtually plenary”), cert. denied, 484 U.S. 898, 108 S.Ct. 234, 98 L.Ed.2d 193 (1987). I believe that the sale of the collateral at the instigation of the secured creditor is adequate cause to reconsider a previously allowed secured claim under § 502(j). See In re Mason, 315 B.R. 759, 761 (Bankr.N.D.Cal.2004)(“liquidation of the collateral by the secured creditor is adequate cause to reconsider a previously allowed secured claim” under § 502(j)); In re Dykes, 287 B.R. 298, 303 (Bankr.S.D.Ga.2002)(granting relief from automatic stay to repossess and sell collateral is sufficient “cause” to reconsider under § 502(j)); Zieder, 263 B.R. at 117. I would therefore reverse the district court’s decision, and remand to the bankruptcy court to treat as a § 502(j) motion for reconsideration the Trustee’s objection to the lifting of the stay and classification of the deficiency as a secured claim.
When reconsidering a claim under § 502(j), a court may readjust the claim in any fashion that the equities of the case deem necessary. Id. Reconsideration under § 502(j) can occur even after a plan is confirmed. See Int’l Yacht & Tennis, Inc. v. Wasserman (In re Int’l Yacht & Tennis, Inc.), 922 F.2d 659, 662 n. 5 (11th Cir.1991)(stating that the probable intent of a 1984 amendment to § 502(j) was to allow claims to be reconsidered after a ease has been closed and reopened); Dykes, 287 B.R. at 303 (stating that after confirmation, a “ § 502(j) ‘motion to reconsider’ is the only means by which a claim’s continued validity may be questioned”); In re Gomez, 250 B.R. 397, 400 (Bankr.M.D.Fla.1999)(stating that § 502(j) creates a narrow exception to the res judi-cata effect of § 1327 that allows reconsideration after confirmation). A § 502(j) analysis of a deficiency can also account for a debtor who contributed to depreciation loss in bad faith. A bankruptcy court can determine that the deficiency amount can only be treated as an unsecured claim if the request is in good faith and leads to an equitable result. Zieder, 263 B.R. at 119 (stating if excess depreciation is due to fault of debtor, creditor may object to § 502(j) modification for lack of good faith); In re Johnson, 247 B.R. 904, 908-09 (Bankr.S.D.Ga.1999). Furthermore, when a reconsideration under § 502(j) renders a deficiency as unsecured, a creditor may be entitled to an administrative-expense claim for failure of adequate protection, which “has priority over unsecured claims and is paid in full. 11 U.S.C. § 507(a)(1) & (b).” Id. at 909.
Finally, I believe that the plain language of § 506(a) necessitates the conclusion that any deficiency remaining after the secured creditor has initiated a sale of collateral must not be treated as a secured claim, and therefore must be reconsidered under § 502(j). Section 506(a) provides:
An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor’s interest in the estate’s interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor’s interest or the amount so subject to setoff is less than the amount of *309 such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor’s interest.
11 U.S.C. § 506(a) (emphasis added). The Supreme Court has repeatedly cited § 506(a) as the basis for the tenet that a claim is secured only to the extent that it is secured by an interest in collateral. See, e.g., Till v. SCS Credit Corp., 541 U.S. 465, 470 n. 5, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004); Assocs. Commercial Corp. v. Rash, 520 U.S. 953, 956, 960, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). To hold otherwise, as the majority does, would turn the definition of a secured claim on its head. The majority does not explain why § 506(a)’s definition of a secured claim can be ignored in these circumstances. Here DaimlerChrysler initiated the sale of the collateral that secured its claim, and therefore by definition, its claim is no longer secured. There is no provision in the Bankruptcy Code that gives a creditor a secured claim without any collateral. See Zieder, 263 B.R. at 117. I respectfully dissent.